GEORGE W. PHELPS, Appellant, *v.* JAMES HAWLEY and others, Commissioners of Highways for the Towns of Geneseo and Leicester, Respondents.

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1870.)

An act of the legislature (Sess. Laws, 1837, p. 432) gave authority to " The Leicester Bridge Company," to contsruct and maintain a bridge over a stream which divided two towns in Livingston county, and in case the bridge should be destroyed, and not restored within a certain time thereafter, declared as follows : " The said bridge shall thereupon become a public bridge, and may be maintained at the expense of the county," It was .held that the words " may be maintained," were equivalent to shall be maintained, and a bridge built pursuant to the act, having.been destroyed, and, after default by the bridge company, rebuilt as a public highway, that the commissioners of highways for the towns connected by it, had no authority to contract for its repairs.

Whether the commissioners of highways of towns have power to contract for the repairing of bridges over streams lying between such towns, to an amount exceeding the sum authorized to be raised for that purpose. *Quere.*

APPEAL by the plaintiff from a judgment rendered against him by the court.

The action was brought, to recover the sum of $6,000, against the defendants as commissioners of highways for the towns of Geneseo and Leicester, in Livingston county, upon a contract, made with the plaintiff by their predecessors in office, for repairing a bridge over the Genesee river between the two towns.

It appeared that the bridge had been originally built in 1837, upon a public highway, by " The Leicester Bridge Company" under authority of an act of the legislature passed in that year (Laws 1837, p. 432), and thereafter until 1851, maintained as a toll-bridge by that company. In 1851 the bridge was carried off by a freshet, and eighteen months afterward, upon neglect of the company to rebuild, it was restored by commissioners acting under authority of the supervisors of Livingston county, and was paid for by the county. In 1866, it was again destroyed, and the commissioners of high

ways of the two towns, without any special authority, or vote of the towns, or either of them, or of the supervisors of the county, authorizing any sum of money to be raised for the repair of roads and bridges in such towns, additional to the sum provided by law, and while they had no funds in hand applicable to the expense of erecting the bridge, caused the bridge to be rebuilt at an expense of some $23,000. Shortly after the bridge had been so rebuilt, one of the abutments was found to be so negligently constructed, and insecure, as to require reconstruction, and the contract in suit, was made by the said commissioners of highways, without any further authority or provision for payment, than they possessed at the time of the rebuilding. The plaintiff performed the work provided for in the contract; and the towns of Geneseo and Leicester having repudiated the contract of their commissioners he brought this suit as before stated.

*Scott Lord,* for the appellant, among other points insisted, that whether the towns were liable to make and maintain the bridge, was a question of fact to be decided, in the absence of statutory provision by the legally constituted tribunals of the towns, viz., their commissioners of highways.

That the towns were primarily liable for the maintenance of highways and bridges, and that (§ 9, chap. 388, Laws 1837) in no manner made it obligatory upon the county of Livingston, to build and maintain the bridge in question; the intention of the act, being to enable the county, if it saw fit, to aid the towns in building or repairing the bridge, if the same should be abandoned by the corporators, citing *Hill* v. *Supervisors of Livingston Co.* (12 N. Y., 52.)

That as the law had conferred, upon the board composed of the commissioners of the two towns, power to repair the bridge, it was their duty to cause the repairs to be made. (Laws 1841, chapter 225, § 2, as amended by chapter 383, § 2, Laws 1857; Laws 1841, chapter 225, § 5.)

That the statute authorized the commissioners of highways of the two towns without limitation, to enter into the

contract in question, and provided (1841, § 4) that a judgment against the commissioners thereon should be a charge on the town, and collected as other town charges, reviewing at length, the provisions of the Laws 1841, chapter 225 ; id., 1857, chapters 383 and 639 ; id., 1858, chapter 103 ; id., 1865, chapter 442, to show that no limitation had been imposed upon the commissioners of the two towns, acting jointly in regard to bridges between their adjoining towns.

*James Wood,* for the respondents, argued substantially, that if the commissioners of highways for the respective towns, in making the contract, acted within the scope of their official powers, the towns which they represented were bound by their contract, but that the commissioners had no such authority.

That no power is conferred by law upon commissioners of highways, to enter into contracts for the fulfillment of which funds have not been provided.

That the towns in question, were not liable as a matter of law, to construct the bridge, or rebuild the abutment, as all the powers conferred on the commissioners, and upon the electors of the towns respectively, and both of them, and upon the supervisors of the county, to raise money for the purpose, if exercised to its fullest extent, would have been insufficient to raise an amount sufficient to meet the debt sought to be created against the towns by the contract in question.

He also argued that the bridge was not a town bridge, within the meaning of the statute, conferring upon commissioners of highways the power to erect or repair bridges; that they (the commissioners) were under no obligation to the public, or individuals, to cause the bridge to be reconstructed after it had been destroyed by the flood, and that the act of 1841 had, therefore, no application to it.

Present—MULLIN, P. J., and TALCOTT, J

Phelps v. Hawley.

MULLIN, P. J.   Prior to the passage of the act entitled "An act relating to the joint liability of commissioners of highways," there was no law regulating the manner in which bridges across streams dividing towns should be erected or repaired.

The Court of Errors, as early as the 17 Johns. R., 439, had held that the duty of building and repairing bridges under the laws of this State devolved on the towns, and not on the counties, as in England. And in *Hill* v. *The Supervisors of Livingston* (2 Kern., 52), the Court of Appeals held, that the duty of building and repairing bridges between towns also devolved on the towns, and not on the counties.

As to bridges being wholly in a town, the Revised Statutes (2 R. S., 5 ed., 381, § 1) had devolved the care of them on the commissioners of highways, but the obligation to build or repair depended upon whether they had funds in their hands applicable to that use. (*Bartlett* v. *Crozier*, 17 J. R. 439; *Garlinghouse* v. *Jacobs*, 29 N. Y., 297.)

By sundry statutes enacted since 1830, provision was made for increasing the amount of moneys that could be raised in towns for the erection and maintenance of bridges, but none of them are made in terms applicable to bridges between towns.

The duty of the towns separated by a stream over which a bridge became necessary, or an existing bridge needed repairs, was of imperfect obligation ; the towns were bound to build or repair, but no means were provided to enable the officers of the towns to perform the work ; nor if they disagreed was there any mode prescribed for compelling them to unite in doing it.

If the officers of the respective towns were in funds, and could agree upon the manner of building or repairing a bridge, they might, to the extent of the funds in hand, co-operate in the work, but they had no power to incur a debt to be paid by the towns, nor in any other manner impose a pecuniary obligation on their respective towns.

The act of 1841 (chapter 225 of the Laws of that year) is the first statute designed to regulate the manner of building and repairing bridges between adjoining towns, and its provisions, as well as those of other acts relating to the same subject, have no application to bridges lying wholly in towns. The system is a new and independent one, and is to be construed accordingly.

By that act it is provided:

1. That bridges between towns are to be built and maintained at the joint expense of the towns, without reference to town lines.

Before that statute, each town was liable to build and maintain a bridge to its line, wherever in the stream that line might run.

2. The commissioners of the respective towns, or the commissioners of one of them (the commissioners of the other town refusing to act) were authorized to enter into contracts for the erection or repair of such bridge, and such contract might be enforced against such commissioners.

3. If the commissioners of either town should refuse, after notice, to unite in building or repairing a bridge, the commissioners of the other town were authorized to build or repair, and to sue the commissioners of the town refusing to unite for its proportion of the expense; and in such action proof that the commissioners sued had funds need not be made.

Authority is thus given to charge a town with any amount of liability necessary to erect or repair, in the first instance, the whole of a bridge, one-half of which may be sued for and recovered of the adjoining town.

In 1857 an act was passed entitled "An act further to provide for the raising funds by tax, to pay for the building or repair of bridges across streams dividing towns or counties." (Chap. 639 of the Laws of 1857.)

That act provided for building or repairing bridges in case the commissioners of both towns liable to contribute to the expense thereof refused to unite in doing the work, and in

case the commissioners of one of the towns were willing to perform the duty, and those of the other were not, then to enable the town that was willing to compel the other that was not to unite in doing the work; and if none of the free-holders or commissioners of either town should institute proceedings to compel the erection or repair of the bridge, then any individual or corporation might build or repair, and sue for and recover, of the towns, the sums expended in so doing.

It will be seen that the legislature has provided in the most effectual manner for the erection and repair of bridges between towns in every possible contingency, and resort is no longer necessary to doubtful remedies unless litigation is desired.

In the several acts to which reference has been made, proceedings are authorized against towns *liable* to make or maintain bridges over streams between towns.

The court below was of the opinion that the adjoining towns were not liable unless the commissioners had funds applicable to making or repair of bridges. I cannot concur in this view of the law. The towns are presumptively liable when the bridge crosses a stream dividing them, and before they can be relieved from that liability they must prove that the duty rests elsewhere, and not upon them.

The possession of funds is only material when the bridge lies wholly in a town.

By limiting the provisions of the Revised Statutes to bridges lying wholly in towns, and treating the statutes of 1841 and 1857 as establishing a new and independent system for bridges between towns, much of the confusion resulting from any attempt to make the provisions of the Revised Statutes applicable to bridges between towns would be avoided.

The ninth section of the charter of the Leicester Bridge Company imposed upon the county of Livingston the maintenance of the bridge in question, in the event of the happening of several contingencies, one of which was the failure to rebuild within eighteen months after the bridge, if built, should be carried away by unavoidable accident. This con-

tingency did occur, and the bridge was not rebuilt within the term limited. The language of the act is, that in the event referred to, the bridge should become a public bridge, and *may* be maintained at the expense of the county.

It is argued that the phrase "*may be maintained*" leaves it discretionary with the board of supervisors whether they will assume the burden, and if not, then it falls upon the towns. This is one of the cases in which, I apprehend, *may* is to have the force and effect of *shall;* thus making the provision mandatory instead of discretionary.

The bridge was built by a private corporation. It would seem to have been expensive to build and to maintain. To cast upon the towns the burden of the maintenance of such a structure would be exceedingly harsh, and yet in the absence of a statutory enactment it would have fallen on the towns. To relieve them the support of the bridge was thrown upon the county. It assumed the burden, and afterward rebuilt and repaired the bridge. The towns had pecuniary interest in the performance of the duty by the board of supervisors, and the traveling public had also an interest in the performance of the duty by the supervisors.

It is in such a case as this that *may* means *must* or *shall.*

The chancellor, in the *Newburgh Turnpike Co.* v. *Miller* (5 J. C. R., 101–113), held that "*may*" means *must* or *shall* only in cases in which the public interest or rights are concerned, and when the public or third persons have a claim *de jure* that the power shall be exercised.

I think this case comes within the rule of the chancellor; and if so, then the support of the bridge devolved on the board of supervisors, and not on the towns.

Upon this ground I am in favor of affirming the judgment.

But if it were not for the provision under consideration I should be of the opinion that the maintenance of the bridge devolved on the towns, and that the contract with the plaintiff was legal and binding under the act of 1841, herein before referred to. I entertain no doubt but that the commissioners of adjoining towns may enter into a contract for the building

or repair of a bridge over a stream between them, and obligate the towns to pay therefor any amount required to effect the object, without the approval or assent of the town or any other of its officers.

If the section of the charter, to which reference has been made, cast the maintenance of the bridge on the county, nothing has occurred since to relieve it from the obligation. It would seem that after the supervisors had refused or omitted to make necessary repairs, the towns expended money for that purpose. This they had no right to do. Neither can they now, without legislative authority, assume the maintenance of the bridge.

For these reasons I am in favor of affirming the judgment.

TALCOTT, J., was for affirmance of the judgment, upon the ground that the commissioners of highways cannot bind the town by a contract to repair a bridge in excess of the amount authorized to be raised for that purpose, and also upon the ground that by the charter of the Leicester Bridge Company, the contingency having happened upon which the bridge in question was to become a public bridge, the duty and expense of its maintenance was devolved on the county of Livingston.

JOHNSON, J., having made the decision appealed from, did not sit on the appeal.

Judgment affirmed.