### *In re* SPIER *et al.*

(*Supreme Court, General Term, Third Department.* December 31, 1888.)

1. COUNTIES—BOUNDARIES—ISLANDS.
    Under 3 Rev. St. N. Y. p. 8, § 24, fixing as the boundary line of Warren county the middle of the north branch of the Hudson river, "and of the main stream of said river," to include the whole of every island any part of which is nearer to the north or east shore than to the other, and to exclude islands any part of which is nearer to the south or west shore, the main stream is the boundary, subject to such variations as may result from the presence of islands in the main stream, and islands not in the main stream do not affect the course of the boundary, no matter what their distances from the respective shores.

2. BRIDGES—BETWEEN ADJOINING TOWNS—DUTY TO REPAIR.
    Laws N. Y. 1841, cc. 35, 50, authorizing the counties of Warren and Saratoga, through certain named commissioners, to build a bridge over the Hudson river, and loaning them money for that purpose, do not empower the highway commissioners of said counties to agree that each shall build a bridge to an island in the river so as to bind each county, or the respective towns of each county, to repair or replace the bridge on that side of the island next to its boundary.

3. SAME—PROPORTIONATE LIABILITY.
    Under Laws N. Y. 1857, c. 639, providing that the expense of a bridge over a stream between two towns shall be justly proportioned between them, and chapter

383, providing that a bridge for the maintenance of which two towns are liable shall be built and maintained at their joint expense, the cost should be divided between them, regardless of their relative wealth and population.

4. SAME—LIABILITY OF COUNTY.

Nor do the statutes mentioned, making a loan to the counties, and authorizing them to levy a tax on such of their towns as they deemed fit to repay the loan, impose any liability on the counties to repair the bridges, as such burden rests primarily on the towns each side of a stream, by virtue of Laws N. Y. 1857, c. 639, and, the river at that point not being navigable tide-water, Laws 1880, c. 320, making a bridge across such navigable waters a charge on the county, instead of the towns, is not applicable.

Appeal from special term, Washington county.

Application of William Spier and others, freeholders, to compel the commissioners of highways of the towns of Queensbury, in Warren county, and Moreau, in Saratoga county, to build a bridge across the Hudson river. The order was granted, and the town of Moreau, and John Conlin, commissioner of highways for said town, appeal. Laws 1857, c. 383, § 1, provides that "whenever any two or more towns shall be liable to make or maintain any bridge or bridges, the same shall be built and maintained at the joint expense of said towns, without reference to town lines."

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*L'Amoreaux & Dake*, (*L. B. Pike*, of counsel,) for appellants. *M. A. Sheldon*, for respondents.

LEARNED, P. J. The southern boundary of Warren county (which is the line dividing the towns of Moreau and Queensbury) is as follows, so far as material: "And southerly by the line last mentioned until it strikes the north branch of Hudson's river, and by the middle of the said branch, and of the main stream of the said river; until it reaches the south-east corner of the patent of Queensbury, with such variations as may be necessary to include the whole of every island, any part whereof is nearer to the north or east shore of the said river than to the south or west shore thereof, and to exclude the whole of every island any part whereof is nearer to the said south or west shore than to the north or east shore aforesaid." 3 Rev. St. p. 8, § 24.

Now, it is plain that the meaning is that, after the line strikes the north branch of the Hudson, it is to run by the middle of said branch and of the main stream of said river; those last words being important. It is to run by the middle of the main stream only. Though there may be side streams of the river, they are not to be considered in running the line. But the middle of the main stream is to be taken, and not the middle between the extreme banks of all streams. Furthermore, it follows from this that when the description speaks of variations to include or to exclude islands, (if there be any,) this language refers to islands lying in the main stream of the river; otherwise, if there were a main stream somewhat narrow, and on one side, say the east, of it were several side streams, making up in all a considerable width, and if in one of those side streams there were an island, part of that island might be nearer to the west shore of the whole river than to the east. Hence, unless the construction above taken be correct, the dividing line would diverge entirely out of the main stream, and make a circuit to include the island in a side stream. This is not a reasonable construction. By the words, "shore of said river," the statute means "shore of the main stream of the river," of which it had just spoken. The statute means that the middle of the main stream shall be followed. If, following such middle, the line comes to an island, then the line is to vary enough so that the island shall not be divided, but shall belong to that side of the main stream to which any part of the island is nearer. The word "variations" indicates that such is the meaning; and that the line is not to go out of the main stream, but is only to vary from the middle of the main stream so as not to divide an island therein, but to leave it on that side to the shore of which it is the nearer.

Any other construction might carry the boundary line entirely out of the main stream, and thus leave the whole of the main stream at some place in one county. This view disposes of the principal question in this case.

It is evident that the wooden bridge, which by the order of the special term is to be rebuilt, spans the main stream of the river. The dividing line of the counties is therefore the middle of that stream. At this point the river runs substantially eastward. If the south end of this wooden bridge rests (as the appellants claim) on an island, that island is not in the main stream, but separates the main stream from what (if any stream at all) is a side stream. It must generally be that, between the main stream and a side stream, at any place, there will be an island. But in tracing the boundary line between the counties there is to be no divergence from the middle of the main stream in order to take in such island, even though the little side stream might be a mile away from the main stream. So, in this case, the respondents say that the land in which the south end of the wooden bridge rests is not an island. But, even if it were, it plainly appears that the main stream is between that island (or whatever it be) and the shore on the Warren county side. The middle, then, of that main stream is the boundary line.

The appellants urge that there is water running on the south side of this so-called island, and they desire to measure from the extreme south line of any such water to the Warren shore, and to fix the boundary line in the middle between those points. But it can hardly be contended that the water on the south side of such so-called island is the main stream, so that in the appellants' view there must be two streams. And the statute declares that it is the middle of the main stream which is to be the boundary. We have already shown that it is to islands in the main stream that the variations directed by the statute must apply, and not to islands outside of the main stream, which in no respect interfere with the boundary line in the middle of such main stream. It is next insisted by the appellants that the two bridges—the stone and the wooden—were in 1841 erected respectively by the counties of Saratoga and Warren, under Laws 1841, cc. 35, 50. But those statutes authorize the building of a bridge across the Hudson, and they contain nothing which indicates any such separation or dividing of the work. The bridge is spoken of as a whole, and each county is aided by a loan from the state. The appellants further insist that an agreement was made in 1840 or 1841 between the highway commissioners of the two towns of Moreau and Queensbury, that the town of Moreau should build the bridge from the Moreau side to the so-called island, and the town of Queensbury from said island to the Queensbury side. We think there is no sufficient proof of any such agreement. Nor do we see any authority in the highway commissioners thus to change the future legal obligations of the towns. Furthermore, it will be seen by reference to the statutes above cited that the bridge was to be built by commissioners named and appointed by the statutes, and not by the highway commissioners. Whether these persons were or were not highway commissioners is immaterial. Their authority for building the bridge was derived from the statute. Nothing therein contained authorized them to make arrangements as to future repair or maintenance.

The appellant urges that the duty to maintain this bridge rests on the counties, and not on the towns. There is nothing in the two statutes of 1841, above cited, which determines this. These statutes gave a loan to the county, which the supervisors were to levy and collect from such towns as they deemed just, and repay to the state. *Hill* v. *Supervisors,* 12 N. Y. 52, holds that towns are primarily liable for the maintenance of bridges, including those between towns. This is recognized in *Phelps* v. *Hawley,* 3 Lans. 164. Chapter 225, Laws 1841, provides that when adjoining towns are liable to make and maintain any bridge over any stream dividing said towns, such bridge shall be built and repaired at their equal expense; and it provides a

mode of compelling a town which neglects. This is not changed in substance by chapter 383, Laws 1857. This river is not, at this place, navigable tide-water, and therefore the provisions of chapter 320, Laws 1880, making the bridge a charge on the counties, does not apply. The two towns of Moreau and Queensbury being in different counties, it is plain that that part of the act last cited, which gives the supervisors power to apportion the expense be-tween the towns liable, cannot apply to this case. Laws 1857, c. 639, provides for the proceeding here in question, whenever any adjoining towns shall be liable to make or repair any bridge over a stream dividing said towns. Pre-vious to 1840 there had been a toll-bridge at this place. Laws 1802, c. 103; Laws 1830, c. 277. Then in 1841 the present bridge was constructed. The rule has long ago laid down that "if a man build a bridge, and it becomes useful to the county in general, the county shall repair it." *Rex* v. *West Rid-ing*, 5 Burrows, 2594. Or, as again stated, if a bridge be of public utility, and used by the public, the public must repair it, though built by an individual. *Rex* v. *West Riding*, 2 East, 342. The doctrine is recognized in *Heacock* v. *Sherman*, 14 Wend. 58, and *Dygert* v. *Schenck*, 23 Wend. 446, where it is said in the English cases that the county must repair, the language refers to the system there, by which such duties fall on the county. Otherwise with us. *Hill* v. *Supervisors, ut supra*. The important point in the present case is that the public are to repair, according to the general rules applicable to such cases. See *Dygert* v. *Schenck, ut supra*. We think, then, that on the facts shown it sufficiently appears that these towns were bound to maintain the bridge.

The appellants further insist that if they are liable at all they should not be charged with one-half; and that this is not a "just proportion of such ex-penditure," considering the relative population and taxable property. Laws 1857, c. 639. But we must take those words in connection with section 1, c. 383, of the same year. That statute, amending chapter 225, Laws 1841, was construed in *Lapham* v. *Rice*, 55 N. Y. 472. It was held that the two towns were to contribute equally. This decision shows what a "just proportion of the expenditure" means.

After a careful examination of the various objections urged by the appellants we are satisfied that none of them are valid. It would be unnecessary to state in any detail the voluminous testimony given in the case. Order affirmed, with $10 costs and printing disbursements. All concur.