MATHER *vs.* CRAWFORD, Commissioner of Highways of the town of Rathbone.

A commissioner of highways has no power or authority to bind a town, except such as is expressly conferred by statute, or such as is necessarily implied from the power expressly conferred.

The statute nowhere, either expressly or impliedly, authorizes such commissioner to pledge the credit of the town, in any manner.

A commissioner who enters into a contract with an individual for work, either upon highways or bridges, when no means have been provided by the town, may incur a personal liability, but cannot impose any liability upon his successor in office, or upon the town.

The principle of estoppel does not apply to the unauthorized acts of a predecessor in office, when the action is to charge the successor in his official capacity.

Commissioners of highways have the implied power to construct new bridges; especially such bridges as it is the duty of towns to make and keep in repair.

But in no case have commissioners any power or authority to construct bridges, at the expense of the town, or of the county, unless they are connected with, and form a part of, an existing highway.

THE action was brought to recover for services rendered, in building or repairing a bridge in the town of Rathbone, in the county of Steuben. The pleadings admit, and the proof shows, that Lucius Parker was, from May, 1856, until after January, 1858, sole commissioner of highways of the town of Rathbone. That Harrison Van Scoy was his successor, and was sole commissioner of said town at the time of the commencement of this action. The action was originally commenced against Van Scoy, and he having been succeeded in office by Lewis D. Crawford, the latter was, after the trial, substituted in his place as defendant. In 1857 the plaintiff built a bridge across the Canisteo river, in said town, at the request of Parker, as such commissioner, at the agreed price of one hundred dollars. The bridge, after being finished, was accepted by said Parker, as commissioner, and had since been used by the public as part of the highway. It appeared that a bridge had formerly stood where this was built. That the superstructure went off by a freshet, and the work by the plaintiff was replacing a superstructure upon the same piles

and abutments, and for which no pay had been received by him. Parker gave his order to the plaintiff on the town collector for one hundred dollars, June 30, 1850, which the plaintiff presented to the collector for payment. It was not paid. It did not appear by the proof that the bridge in question was built on a public highway, or that the river intersected a public highway at that place.

The action was tried at the Steuben circuit, in April, 1861, before Justice KNOX and a jury. The plaintiff had a verdict. Several exceptions were taken, on the trial, which were ordered to be heard, in the first instance, at a general term.

*F. C. Dininny,* for the plaintiff.

*Geo. B. Bradley,* for the defendant.

*By the Court,* JOHNSON, J. The action is brought against the successor in office of the commissioner with whom the contract to build the bridge in question was made, and whether the action can be maintained or not depends entirely upon the question whether the contract was within the scope of the authority of the predecessor, as commissioner of highways, and was binding upon the town, of which he was at the time such commissioner. (2 *R. S.* 474, § 98.) If it was, the action is maintainable against the defendant, and the judgment, when recovered, is to be collected of him personally, and the amount allowed to him in his official account against the town. (2 *id.* 476, § 108.) A commissioner of highways has no power or authority to bind a town, except such as is expressly conferred by statute, or such as is necessarily implied from the power expressly conferred. The statute nowhere, either expressly or impliedly, authorizes such commissioner to pledge the credit of a town, in any manner. He is made the agent of the town to expend, in the care and superintendence of the highways and bridges thereof, such moneys as have been raised by the town in pur-

suance of the statute for those objects, or such as may come to his hands from other sources, for such purposes, but he is no agent and has no authority to create a debt against his town by any contract he can make. This was expressly held in the case of *Barker* v. *Loomis,* (6 *Hill,* 463.) In that case money had been borrowed by the commissioners of highways, and expended upon the highways and bridges. At a subsequent annual town meeting of the town, a vote was taken on a proposition to raise the amount to meet the loan. The proposition was opposed on the ground that the commissioners had no power to create the debt, and was rejected by the voters. The action was brought against the successors in office, upon the obligation given by the then commissioners, for the money borrowed, and it was held that no legal obligation had been created against the town, and consequently no action would lie against the successors in office. It is quite obvious that a commissioner has no more power to create a debt against a town, by contracting directly for work and labor, and materials to be found, than he has by borrowing money to pay for such work, labor and materials. The power in either case is the same, precisely. It is an attempt to charge the town, beyond the means it has consented to provide for such purposes ; or in the absence of any such provision, and unless it is within the scope of the commissioner's authority, it is not a contract " by or in behalf of" the town ; and the action will not lie upon it against the successor in office.

Highway commissioners can compel their town to raise the sum of two hundred and fifty dollars, in any one year, for the purpose of making improvements upon roads and bridges, by making a statement of the improvements necessary to be made thereon, and an estimate of the probable expense of making such improvements, beyond what the labor to be assessed for that year will accomplish. (1 *R. S.* 502, § 3.) This statement and estimate are to be delivered to the supervisor of the town, who is to lay it before the board of super-

visors at their next annual meeting. The board of supervisors is to cause the amount so estimated, to be assessed, levied and collected in such town, but the amount in any one year, upon any such estimate, is not to exceed the sum of two hundred and fifty dollars. (*Id.* § 4.) This is the only manner in which highway commissioners can, by their own exclusive act or volition, impose any burthen or charge upon their town. If the commissioners are of opinion that the sum of two hundred and fifty dollars will prove insufficient to make the necessary improvements, they may apply in open town meeting for a vote authorizing an additional sum to be raised for that purpose, not exceeding $750. (*Id.* § 5.) This additional sum the electors may by vote authorize to be raised; but before the application can be made, notice of the intended application is to be posted by the commissioners, in at least five of the most public places in town, at least four weeks next preceding the annual town meeting. (1 *R. S.* 341, §§ 10, 11, 13.)

By referring to these sections, it will be seen that this additional sum may be authorized by the electors to be raised, to pay any balance which may be due, for improvements already made, as well as to be expended in new improvements. The plaintiff's counsel contends that the unavoidable inference from this is that the commissioners may create a valid debt against the town by their contracts, for improvements and repairs, without reference to the amount which may be raised at their instance in the manner prescribed. But this does not follow. It is simply the mode prescribed by statute for raising funds, for the purpose of liquidating claims, for expenses incurred in making repairs or improvements, beyond the funds provided by the town. Power is given to the electors to provide means for the payment of such claims, which it is to be presumed they will always properly and equitably exercise, but which they cannot be compelled to exercise at the instance of the claimant, in case they refuse. The whole scheme and policy of the statute, as it seems to me, evidently

is to invest the commissioners with power to expend all moneys raised for such objects in the mode prescribed, in the repairs and improvement of highways and bridges in such manner as shall seem to them most judicious, but to confer upon them no power to bind the town by contract, beyond, or independent of, such appropriation. A single exception to this is to be found in *Sess. Laws of* 1858, *ch.* 103, §§ 1, 2 *and* 3, where roads or bridges have been damaged, or destroyed, after any town meeting shall have been held, or when it is too late to give the prescribed notice. But in such case it can be done only by and with the consent of the board of town auditors of the town, and then the audited account constitutes the obligation against the town. It is manifest that no powers were intended to be given, except such as were necessary to enable the officer to perform the duties imposed ; and it has been very frequently, and quite uniformly, held, that such officers were under no obligation, or duty, to make repairs or improvements, either upon highways or bridges, beyond the means raised and placed in their hands for that purpose. (*Bartlett* v. *Crozier*, 17 *John.* 452. *The People* v. *Commissioners of Highways of Hudson*, 7 *Wend.* 474. *The People* v. *Adsit*, 2 *Hill*, 619. *Morey* v. *The Town of Newfane*, 8 *Barb.* 645.) Unless this is so, towns are completely at the mercy of these officers, and may be involved to any extent, at their discretion, and all the restrictions and limitations of the statute, upon them, and upon the electors at town meetings, and upon boards of supervisors, in respect to the amount of assessments in any one year, apparently designed for the protection of towns against exhorbitant and oppressive burthens, will be rendered of no avail. A commissioner who enters into a contract for work, either upon highways or bridges, where no means have been provided by the town, may incur a personal liability, but cannot impose any liability upon his successor in office, or upon the town. A successor in office, as it seems to me, without funds in his hands, or funds provided which are to come into his hands,

Mather *v.* Crawford.

can no more be made liable upon his predecessor's contracts, than he could have been for refusing to do the work in the first instance, under the same circumstances. It was for the plaintiff to show, affirmatively, such a contract as would bind the defendant as a successor in office.

Most clearly the principle of estoppel does not apply to the unauthorized acts of a predecessor in office, where the action is to charge the successor in his official capacity.

It is claimed, on the part of the defendant, that highway commissioners have no power or authority conferred upon them, by statute, to build new bridges, where none have before been built; but that, on the contrary, all their power is confined to the repair and superintendence of those already in existence. It is true that the statute does not, in direct and express terms, make it the duty of the highway commissioners to construct new bridges, but I think it does so by unavoidable implication; especially as to all bridges which it is the duty of towns to make and keep in repair. Such bridges are simply parts of the highways of the town, and are absolutely necessary in order to render highways at all times passable with convenience and safety. They are intrusted with the general care and superintendence of all highways and bridges in their respective towns, and are required to keep in repair such as are or may be erected over streams intersecting highways. No provision is made for their construction, otherwise, except such as are constructed with funds raised at the expense of the county, and even then the money when collected is to be paid over to the commissioners of highways of the town in which it is to be expended. I have no doubt, therefore, that the power to build new bridges is vested in the commissioners of highways. Within the means provided by the town, they may do whatever is necessary to render the highways safe and convenient for the public to pass over.

But in no case have commissioners any power or authority to construct bridges, at the expense of the town or the coun-

Mather *v.* Crawford.

ty, unless they are connected with, and form part of, an existing highway. They are required to keep such bridges in repair as are built over streams intersecting highways, and no others. (1 *R. S.* 501, § 1, *sub.* 4.) As to any other bridge, their acts and contracts are no more binding upon the town, or the successors in office, than those of any private person. A bridge not connected with a public highway, and forming no part of it, would be mere private property, in which the public would have no interest whatever, and which they could not use for any purpose, without the permission, express or implied, of the owner of the land. It would have been a good defense, therefore, for the defendant to have proved, as he offered to do, that the bridge in question was not built upon, or in connection with, a public highway. That fact, alone, would have shown conclusively that the contract was not within the scope of the authority of the commissioner, even should it be held valid in other respects. The exclusion of that evidence was therefore erroneous.

It may be that, in equity, the town ought to raise this money, and pay the amount claimed by the plaintiff; and if they ought, it is to be presumed the electors will by vote authorize it to be raised, when properly applied to.

But the question here is, whether the commissioner can legally, of his own mere volition, create a debt against the town, and thus force a burthen upon it, without any previous statement and estimate, or any application in open town meeting, and vote of the electors, as required by statute. It seems to me very clear that he cannot. I am of the opinion, therefore, that a new trial must be granted, on both grounds.

[MONROE GENERAL TERM, June 2, 1862. *Johnson, Welles* and *Smith,* Justices.]