HENRY BECKWITH and others, Commissioners, &c., Appellants,
   *v.* HARVEY WHALEN, Commissioner, &c., Respondent.

(GENERAL TERM, FOURTH DEPARTMENT, JANUARY, 1872.)

The law imposes an obligation upon two towns, separated from each other
   by a creek, to build a bridge across such creek at their joint expense
   only in cases where the bridge connects two highways lying in the towns
   respectively.

Accordingly, where it appeared by the opening of plaintiffs' counsel in a
   suit brought by the highway commissioners of the town of B. against
   the highway commissioner of the town of P. for contribution to the
   expense of building a bridge across a creek separating the two towns,
   which bridge had been built by plaintiffs after due notice to defendant to
   unite in building the same and refusal, pursuant to chap. 225 of 1847,
   as amended by chap. 383 of 1857, merely that a highway in P. connected
   with the highway in B. by such bridge had been laid out but had in part
   not been worked as such for twelve years, though a part of it not
   designated had been worked within six years, it was *held*, that the highway
   last mentioned must be deemed to have been abandoned, and that as no
   liability appeared from these facts on the part of the town of P. to con-
   tribute to such bridge, a nonsuit was properly granted at the close of such
   opening.

The statute chap. 639 of 1857 does not, *it seems*, repeal chap. 225 of 1841
   as amended by chap. 383 of 1857, and is not wholly inconsistent with it.
   It provides simply for another and different mode of procedure in the
   erection of a bridge between two towns, but does not in terms or by neces-
   sary implication make it the exclusive mode of procedure. (Per JOHN-
   SON, J.)

A nonsuit may be sustained, although placed upon an untenable ground, if
   it appears from the facts that there was good ground for granting it.

APPEAL from a judgment of nonsuit of plaintiff and for costs,
rendered at a circuit court held in Monroe county, February 9,
1871.   The nonsuit was granted on motion of the defendant's
counsel at the close of the opening of counsel for the
plaintiffs.   It appeared, among other things, from the opening,
that the plaintiffs, who were highway commissioners of the
town of Brighton, in Monroe county, commenced proceedings
December 3d, 1868, according to the provisions of chap. 225
of the Laws of 1841, as amended by chap. 383 of Laws of

Beckwith *v.* Whalen.

1857, for the construction of a bridge across the Irondequoit creek, which is the boundary line between the two towns; that the defendant refused and neglected to unite with the plaintiffs in making the contract for building the bridge, and also refused to unite with the plaintiffs in building it, or to pay any necessary part of the expenses. The other facts appear sufficiently from the opinion.

*E. A. Raymond,* for the appellants.

*J. H. Martindale,* for the respondent.

Present—Mullin, P. J., Johnson and Talcott, JJ.

By the Court—Johnson, J. The action was brought by the plaintiffs, as commissioners of highways of the town of Brighton, in the county of Monroe, against the defendant, as sole commissioner of highways of the town of Penfield, in said county, to recover one-half the expenses of a bridge which the plaintiffs, as such commissioners, had caused to be constructed over and across Irondequoit creek, which is the dividing line between the two towns. The plaintiffs were nonsuited upon the opening of their case by their counsel, the court holding that, upon the facts stated, which the plaintiffs expected to prove, no cause of action was made out in favor of the plaintiffs as against the defendant, and no action could be maintained. Upon an examination of the facts of the case, as stated in the opening, I am clearly of the opinion that no cause of action was stated, and that the nonsuit was properly ordered. As a preliminary to any right of action by the commissioners of one town against the commissioners of another town for the construction or repair of a bridge across a stream dividing the two towns, it must be shown that both towns were liable to make or to maintain such bridge. (Act of 1841, Sess. Laws of 1841, chap. 225, § 1; act of 1857, Sess. Laws of 1857, chap. 639, § 1.)

The language of the last act, at the very commencement,

is, "whenever any adjoining towns *shall be liable* to make or maintain any bridge over any streams dividing such towns;" and the language of the first act is to the same effect, though in somewhat different language. In such a case, and in such a case only, provision is made for such building or repair by both towns, or, in case either shall refuse, for the construction or repair by one of such towns, and a recovery by action against the commissioners of the delinquent town to recover its proportion of the expense. In the case at bar, no liability whatever, on the part of the town of Penfield, to build or maintain any part of said bridge, was shown by the statement in the opening. It does not appear, from the statement, that there was any open or public highway on the Penfield side of the creek, but the contrary. It does appear that there was a highway on the other side, through the town of Brighton, leading to the city of Rochester, which intersected the creek in question at the point where the bridge was built. In regard to the road on the Penfield side, all that is stated is, that in the year 1858, ten years before any steps were taken to build the bridge in question, the commissioners of highways of the town of Penfield surveyed and laid out a highway, from a certain point in another highway in said town, over three-fourths of a mile distant from the point where the bridge was built, according to the distances given in the survey, to the latter point at the creek, and that, within six years before the steps were taken by the plaintiffs to build said bridge, *a part* of said highway, thus laid out, had been opened and worked by the town of Penfield. What particular part of the road thus laid out had been opened and worked is not stated, but it clearly appears, from the statement, that a part of it had not been opened and worked or used, even up to the time of the trial, more than twelve years after the time it had been so laid out. The legal inference from this fact, so stated, is, that the portion of the road so laid out, which had not been opened or worked for more than six years, had been abandoned, and ceased to be a highway for any purpose. (2 R. S., 521, § 99; *Lyon* v. *Munson*, 2 Cow.,

426.) This was so decided by this court at the last September Term, in the case of *Christy* v. *Newton* (60 Barb., 332). No town is under any liability or obligation to build or maintain a bridge over any stream, unless such stream intersects a highway. (1 R. S., 502, § 1, sub. 4; *Mather* v. *Crawford*, 36 Barb., 564.) Inasmuch, therefore, as the statement in the opening failed entirely to show a continuous highway through or from the town of Brighton, across the creek and through the town of Penfield, or some part thereof, which was intersected by this creek, it did not show any liability of any description on the part of the latter town, either to build or maintain any bridge at that point, and consequently did not state any cause of action against the defendant; and the plaintiff was properly nonsuited on this ground alone.

There is no statute which gives the commissioners of highways of one town power to compel the commissioners of an adjoining town, either to lay out a new road in their town or to open and work one already laid out. The commissioners of the town of Penfield may have neglected to open this road and work it, and concluded to abandon it for the very purpose of avoiding the expense of building and maintaining a bridge over this stream at this point. This they had a perfect right to do, and cannot be compelled in this indirect way to open a road there for the benefit of any one. The ground on which the nonsuit was placed, as appears by the case, was, that the plaintiffs had not taken the steps pointed out by the statute of 1857, before cited, before proceeding to build the bridge. It is not necessary to decide that question here, because if the nonsuit was proper, on any ground apparent upon the facts stated, it will be sustained, though it may have been granted upon an improper ground or for a wrong reason. I am inclined to the opinion, however, that the nonsuit was placed upon an untenable ground, and that the statute of 1857 (chap. 639) does not repeal or in any way abrogate or interfere with the statute of 1841 (chap. 225), as amended by chapter 383, of the Laws of 1857. This amendment was enacted by the same legislature that enacted chapter 639, and

only three days before the passage of the latter act. The last act does not repeal the act of 1841, as so amended, and is not wholly inconsistent with it. It provides simply for another and different mode of proceeding, but does not, in terms or by necessary implication, make it the exclusive mode of procedure. It is entitled " An act further to provide for raising funds by tax," for the building or repair of bridges across streams dividing towns, &c. The design in passing it appears to have been to give towns a choice of remedies. But, however this may be, the nonsuit was properly granted, for the reason that no cause of action was stated in the opening, on the ground before considered.

The judgment should be affirmed.

Judgment affirmed.