THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN SLATER, Respondent, *v.* JACOB SMITH and Others, Composing the Town Board of the Town of Greece, Monroe County, New York, Appellants.

*Commissioner of highways — presumed to have acted in good faith — adoption of his judgment by a town board, proper — review by mandamus of a refusal to audit — change of persons composing the board.*

A commissioner of highways is the officer having the care and superintendence of the highways and bridges within his jurisdiction; it is his duty to keep them in repair, and a town board is lawfully permitted to make his judgment the measure of its consent as to the reconstruction or repairing of bridges over streams within the borders of the town.

It will be assumed that a commissioner of highways, in the exercise of his official functions, acts in good faith and according to the best of his judgment, unless the contrary appears.

It is not the province of a writ of mandamus to review the exercise of a power, judicial or discretionary in character, of a town board, or to direct what the result of its exercise shall be.

Where a town board refuses to audit an account of a commissioner of highways, upon the ground that no consent or authority has been given to him to build a bridge, for the expense of which such account is rendered, the question whether the consent expressed in a prior resolution of the board is broad enough to authorize the commissioner of highways to proceed in the manner he did, in building the bridge, is one of construction; its interpretation or effect is not necessarily a matter to be controlled by the judgment of the board to which the claim is presented, and so far as there are any facts legitimately bearing upon that question, they are properly the subject of consideration upon the trial of the issues made by the return to an alternative writ of mandamus.

If such board has consented that the commissioner of highways shall construct the bridge, it becomes its duty to audit his bill on the merits when it is duly presented to the board for that purpose.

Where it is the purpose of a writ of mandamus to require the officers constituting a town board, as such, to act, any change in the persons composing the board may be disregarded.

APPEAL by the defendants, Jacob Smith and others, composing the town board of the town of Greece, Monroe county, New York, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 7th day of July, 1894, providing that a peremptory writ of mandamus issue, directed to said board, commanding them to

assemble as a board of town auditors for the town of Greece, and to audit and allow the claim of the relator in this action, John Slater, for the construction of a bridge in said town, known as Little Pond bridge, and interest upon said claim as claimed by the relator, under and pursuant to the authority referred to in the alternative writ herein, and that the relator recover of the defendants the sum of two hundred thirty-two and eighty-six hundredths dollars ($232.86), costs of this action or proceeding, and that he have execution therefor, with notice of an intention to bring up for review upon such appeal the alternative writ of mandamus granted on the 1st day of December, 1893.

*Roy C. Webster* and *John Desmond*, for the appellants.

*D. C. Feely* and *John Van Voorhis*, for the respondent.

Bradley, J.:

The relator was commisioner of highways of the town of Greece, county of Monroe, in the year 1891 and until March, 1893. On April 25, 1891, he appeared before the board of town auditors, and called its attention to the condition of what was known as the Little Pond bridge, and another bridge in the town ; and thereupon the board passed the following resolutions : " Resolved, that the commissioner of highways (John Slater) of the town of Greece is hereby authorized to repair the bridges that may have gone down since the annual town meeting, to the best of his judgment. Resolved, that it is the sense of this board that John Slater, commissioner of highways, should be reimbursed for the moneys expended by him for the benefit of the town of Greece." The relator thereafter, in that year, constructed a new Little Pond bridge at the expense of $291 for the abutments, and $800 for the iron superstructure. The board audited and allowed to the commissioner the amount of such expense for abutments, and rejected his claim for the superstructure.

Upon his petition an alternative writ was issued, requiring the defendants, as such board, to audit the claim or account for such amount with interest, or show cause why the command of the writ ought not to be obeyed. By their return to the writ the defendants

admit the adoption of the resolutions before mentioned, and deny that the relator had by such resolutions, or otherwise, any authority to build the bridge so constructed, or that they by any action on their part ever accepted the bridge. They admit that the relator presented such claim to the board, and that the audit of it was refused, but deny that the refusal to audit the claim was arbitrary, illegal and in violation of their duty.

The trial of the issues resulted in a verdict for the plaintiff, followed by a final order of the court that a peremptory writ of mandamus issue commanding the members of the board of town auditors to assemble as such, and audit and allow such claim of the relator. The old bridge was a wooden one, constructed on log abutments and a pier, and was about forty-five feet in length. The logs had become somewhat decayed, as had also some of the stringers. After the town meeting in that year, and on April twenty-fourth, one end of the bridge fell down, and it was thus rendered impassable. The next day the resolutions above set forth were adopted by the town board.

The leading question is, whether by those resolutions the board consented to the construction of the bridge as it was constructed within the meaning of the statute which provides that " if any highway or bridge shall at any time be damaged or destroyed by the elements, or otherwise, the commissioner of highways of the town in which such highway or bridge may be situated, may, with the consent of the town board, cause the same to be immediately repaired or rebuilt, although the expenditure of money required may exceed the sum raised, or authorized to be raised, for such purposes, as hereinbefore provided ; and the commissioners of highways shall present the proper vouchers for the expenses thereof to the town board at their next annual meeting, and the same shall be audited by them and collected in the same manner as amounts voted at town meetings." (Laws of 1890, chap. 568, § 10.)

The statute also provides for calling special meetings of the board to audit commissioners' accounts for such expenses (Id. § 11), and for verification of such accounts. (Id. § 12.)

There was in the consent given by the resolution no restriction as to the manner in which the commissioner should proceed to provide a bridge at the place in question unless it is found in the use of the

word " repair," and what was reasonably essential to the purpose was expressly left " to the best of his judgment."

It would, therefore, seem that if in his judgment it was deemed best or necessary to its reparation to remodel or reconstruct the bridge, to do so would apparently come within such consent. (*Mather* v. *Crawford*, 36 Barb. 564; *Huggans* v. *Riley*, 125 N. Y. 88.)

And inasmuch as the commissioner was the officer having the care and superintendence of the highways and bridges in the town, and was charged with the duty of keeping them in repair (Laws of 1890, chap. 568, § 4), the board was lawfully permitted to make his judgment the measure of its consent. He had been placed pursuant to the statute in that relation to the public, and in that view the board was at liberty to assume that he would faithfully exercise his judgment and perform his duty in that behalf. If the reparation in material and structure of the passageway made by him over the stream or waterway was the product of his judgment, it is not seen that the commissioner of highways exceeded the consent granted to him by the town board. It may be assumed that in the exercise of his official functions the commissioner acted in good faith, and, therefore, according to the best of his judgment in the matter, unless the contrary appears. This is the rule applicable to the action of officers clothed with discretionary or judicial powers. The old bridge had been supported by log abutments at the ends and a wooden pier in the center consisting of posts supporting a crib of logs. The floor of the bridge rested upon wooden stringers.

The logs of the southerly abutment had gone out and that end of the bridge dropped down. It appears that the other abutment was in a bad condition, and that the pier and substantially all the timbers of the bridge had become somewhat decayed. It cannot well be said that the commissioner was not justified in his conclusion that the repair of the bridge required its reconstruction. He accordingly let the work of putting in stone abutments to the lowest bidder, and in like manner contracted for the iron superstructure. Before that was supplied he put plank upon stringers temporarily for the use of the bridge. It is urged that as in that condition it could have been used by the public, the expense of the iron superstructure was unnecessary and unauthorized. It appears that the highway embrac-

ing the bridge is a thoroughfare upon which there is much travel and transportation with teams and vehicles, heavy as well as light, and the relator may, having in view the safety and durability of the bridge, have deemed the reconstruction of it, as it was accomplished, more economical for his town than the restoration of the wooden bridge would have been. This, within the meaning of the consent of the town board, given as before mentioned, was a matter to be determined by the exercise of the relator's judgment. The contention on the part of the defense is that the controversy has relation only to the exercise of power judicial or discretionary in character of the town board, and that as the board has acted in rejection of the claim, there is no support for the remedy by mandamus. The legal proposition so stated is substantially correct. It is not the province of the writ to review the exercise of such power or to direct what the result of its exercise shall be, and if that is the only purpose it can serve in the present case, the relator is not entitled to it. (*People ex rel. Hammond* v. *Leonard*, 74 N. Y. 443; *People ex rel. Francis* v. *Common Council, etc.,* 78 id. 33; *People ex rel. Millard* v. *Chapin*, 104 id. 96; *People ex rel. Myers* v. *Barnes*, 114 id. 317.)

. But that is not the situation. The town board did not audit the relator's account, and the main ground of its rejection was that no consent or authority had been given to him to build the iron bridge. In this, as viewed here, the board did not give the effect to the resolutions to which they were entitled, and as he had such consent it became the duty of the board to audit his bill on the merits when duly presented for the purpose.

The question whether the consent expressed in the resolution of the board was broad enough to authorize the relator to proceed in the manner he did to provide the bridge, was one of construction in view of the circumstances as they then existed. Its interpretation or effect was not necessarily a matter to be controlled by the judgment of the board when the relator's claim was presented, and so far as there were any facts legitimately bearing upon that question they properly were the subject of consideration upon the trial of the issues made by the return to the alternative writ. The position urged that the purpose or measure of the consent was a matter necessarily to be determined by the judgment of the board is not

sustained, and, therefore, the construction and effect given to the consent is the subject of review in this proceeding. As this board erred in that respect, the rejection of the account on that ground did not conclude the relator in seeking to require that his account be audited. (*People ex rel. Bliss* v. *Board of Supervisors*, 39 N. Y. St. Repr. 313.)

The relator incurred some expense in providing and erecting the iron superstructure of the bridge, and by reason of the consent so given him is entitled to payment of the amount reasonably incurred by him in that behalf.

His bill for it was $800, exclusive of interest, and, so far as it appears here, that sum was the amount of the expense actually incurred by him. But that question is not here for consideration. It is properly the subject of inquiry by the town board, in the determination of which its action will be judicial in character, and as before stated the result of its audit of the claim upon the merits is not the subject of direction by the peremptory writ.

The suggestion that the matter of the account had passed from the jurisdiction of the town board when this proceeding was commenced, and, therefore, it was instituted too late for the purpose of any relief, requires no consideration.

It does not necessarily so appear in respect to the account which the relator seeks to have audited. And no such question seems to have been specifically raised at the trial or pointed to by any exception.

The purpose of the writ is to require the officers constituting the town board, as such, to act, and any change in the personnel may be disregarded. (*People ex rel. Case* v. *Collins*, 19 Wend. 56.)

There was no error in any rulings on the trial bearing upon questions essentially pertinent to those before the court for consideration, and none to the prejudice of the defendants.

The order appealed from, amongst other provisions, directed that the peremptory writ command the town board to " audit and allow the claim of the relator," etc. This may be susceptible of a construction which would give to it an import broader than that intended by the court.

The order should, therefore, be modified by striking out the words " and allow," and by inserting in the place thereof the words " on

the merits," and, as so modified, the order should be affirmed, with costs to the relator.

Dwight, P. J., Lewis and Haight, JJ., concurred.

Order appealed from modified by striking out the words "and allow" and inserting instead thereof the words "on the merits," and, as modified, affirmed, with costs to the relator.