THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE GROTON BRIDGE AND MANUFACTURING COMPANY, Relator, *v.* THE TOWN BOARD OF THE TOWN OF CAMPBELL, Respondent.

*Town board — consent to the construction of a bridge — the highway commissioner has exclusive control after it is ordered — the court on certiorari may determine the amount due the contractor —1890, chap. 568, §§ 10, 11; Code Civil Proc. § 2140.*

After a town board has authorized a highway commissioner to cause a bridge to be built in the town, the duties of the board, so far as the construction of the bridge is concerned, are at an end.

The town board cannot direct the highway commissioner as to the manner of construction nor as to the method by which he shall let the contract, nor as to the person to whom it shall be let.

It cannot, after authorizing such bridge to be built and after it has been constructed, insist that the bridge was unnecessary.

Where a town board refuses to audit such a claim in full the appellate court has power to amend, upon the hearing had upon the return to a writ of certiorari, the determination made by the town board, and to allow the claim of the contractor for the work at the sum which the highway commissioner of the town agreed to pay him.

**586** PEOPLE ex rel. GROTON CO. *v.* TOWN BOARD.

FIFTH DEPARTMENT, DECEMBER TERM, 1895. [Vol. 92.

CERTIORARI issued out of the Supreme Court and attested on the 3d day of July, 1895, directed to John S. Curtis, as supervisor; Ira M. Platt, as town clerk, and John Wilcox, Miles Woodward and D. O. Stark, as justices of the peace of the town of Campbell, composing the town board of said town of Campbell, commanding them to certify and return to the office of the clerk of the county of Steuben all the proceedings had by them concerning the audit of the bill and claim of the relator, presented to and audited and disallowed by them.

*S. D. Halliday,* for the relator.

*Frank H. Robinson,* for the respondent.

LEWIS, J.:

The town board of the town of Campbell, at a special meeting thereof, held on the 10th day of November, 1894, passed the following resolution:

" COUNTY OF STEUBEN, } *ss.:*
   *Town of Campbell,* }

" WHEREAS, the highway bridge, known as the Cohocton river bridge, in the village of Campbell, has become damaged and unsafe for travel, and there not being sufficient moneys in the hands of the commissioner of highways to rebuild the same, therefore, be it

"*Resolved,* that we do hereby consent that the commissioner of highways of the town of Campbell cause said bridge to be immediately rebuilt, and we do hereby empower the highway commissioner to employ an engineer to receive proposals from responsible contractors for the superstructure and substructure of said bridge, and to let the same to the lowest bidder at a cost not to exceed $8,000 for the completed bridge and approaches. Said bridge to be built of iron or steel."

The resolution was signed by the members of the town board.

John King, the commissioner of highways of the town, thereafter entered into a written contract with the relator to construct the bridge according to the plans and specifications annexed to and forming part of the contract, for the price of $5,400, to be paid upon the completion and acceptance of the bridge, the payment

to be made in certificates issued by the town board of said town, pursuant to sections 10 and 11 of chapter 568 of the Laws of 1890, known as the Highway Law. The relator constructed the bridge in accordance with the terms of the contract. The bridge was duly accepted by the highway commissioner, and thereafter, at a special meeting of the board, held in the month of June, 1895, the relator presented to said board a bill for the price mentioned for constructing the bridge. The bill was properly verified and certified as required by section 12 of said Highway Law. The board refused to audit the bill for the full amount, but did conditionally audit it at the sum of $4,475, the condition being that the relator should accept that amount in full payment for the bridge. Upon the petition of the relator a writ of certiorari was issued to the board, commanding them to certify and return to the Supreme Court all the proceedings had concerning the audit of said bill and claim of the relator. By their return to the writ, the respondents stated as their reasons for not auditing and allowing the claim that there was really no need for the bridge; that the old one had not become unsafe or impassable; and, as an additional reason, that the highway commissioner did not let the contract for constructing the bridge to the lowest bidder; that another responsible bridge company had put in a bid for the construction of a bridge like the one constructed by the relator for the sum of $4,475, being the sum of $925 less than the contract price for which the relator agreed to construct it, and that the price agreed to be paid the relator was excessive, and more than the bridge was worth, and denied that the town of Campbell was justly indebted to the relator in the sum of $5,400, or any sum whatever. It was further stated in said return that the respondents, so far as they had the right and power to act, audited the relator's claim at $4,475 on condition that it would accept that sum in full payment for the bridge.

Section 10 of the Highway Law reads as follows : " Extraordinary repairs of highways or bridges.— If any highway or bridge shall at any time be damaged or destroyed by the elements or otherwise, the commissioner of highways of the town in which such highway or bridge may be situated, may, with the consent of the town board, cause the same to be immediately repaired or rebuilt, although the expenditure of money required may exceed the sum raised or authorized.

588    PEOPLE ex rel. GROTON CO. v. TOWN BOARD.

Fifth Department, December Term, 1895.    [Vol. 92.

to be raised for such purposes, as hereinbefore provided, and the commissioners of highways shall present the proper vouchers for the expenses thereof to the town board, at their next annual meeting, and the same shall be audited by them and collected in the same manner as amounts voted at town meetings."

Section 11 provides for the convening of the town board in special session by the supervisor, upon the request of the commissioners of highways, and the bills and expenses incurred in the erection or repairs of bridges may then be presented to and audited by the town board.

The consent of the board was a necessary prerequisite to the right of the commissioner to construct the bridge. The duties of the board, so far as the construction of the bridge was concerned, ended when such consent was given. The work of constructing the bridge then devolved upon the highway commissioner, the official who had been selected by the electors of the town to take charge of such matters. The resolution of the board was unquestionably sufficient to authorize the commissioner to construct a new bridge. (*The People ex rel. Slater* v. *Smith*, 83 Hun, 432.) It was too late to raise the question as to the necessity of building the bridge, after such consent had been given, and the contract made and the bridge constructed. The town board assumed, in their resolution, to direct the highway commissioner as to the course he should pursue in constructing the bridge. They incorporated in their resolution a direction that the commissioner should employ an engineer to receive proposals from responsible contractors for the superstructure and substructure, and to let the same to the lowest bidder.

All this was surplusage, for the manner of constructing the bridge was entirely within the jurisdiction of the highway commissioner. Whether he would build it by contract or employ his own men, or whether he would invite competitive bids, and whether he would let the contract to the lowest or highest bidder, were questions for his decision. It might well be that the best interests of the town would be subserved by not letting the contract to the lowest bidder. The conduct of the commissioner in letting the contract to the relator is impugned by the respondents. They charge him with having acted corruptly and collusively with the relator in accepting the highest bid, when there was a lower one from an equally responsible

concern.  We fail to find in the record any evidence to sustain these allegations.

We fail to find any competent proof that the contract made with the relator was not a proper and judicious one.  The relator having fully performed its contract, there does not seem to have been any good reason for the refusal of the board to audit the claim at its full amount, and when the board refused so to do, and assumed conditionally to audit the claim for a less amount than was the relator's just due, a rule of law was violated to the prejudice of the relator. In such a case the court has the power to amend or modify the determination of the body reviewed, and like power is possessed by the court when the determination is against the preponderance of proof to such an extent that if it were the verdict of a jury it would be set aside as against the weight of evidence. (Code Civ. Proc. § 2140.)  This, we think, is such a case.

The determination of the board should be so modified as to allow the claim of the relator at the sum of $5,400, with interest thereon from the 5th day of June, 1895, with fifty dollars costs and disbursements.

WARD and ADAMS, JJ., concurred; BRADLEY, J., not voting.

The determination of the board of audit so modified as to allow the claim of the relator at the sum of $5,400, with interest from June 5, 1895, with fifty dollars costs and disbursements.