(99 App. Div. 108)

LIVINGSTON et al. v. STAFFORD, Highway Com'r, et al.

(Supreme Court, Appellate Division, Third Department. November 22, 1904.)

1. HIGHWAYS—POWERS OF COMMISSIONER—REBUILDING BRIDGES.

　　Under Laws 1890, p. 1179, c. 568, § 10, as amended by Laws 1895, p. 408, c. 606, providing that "if any highway or bridge shall at any time be damaged or destroyed by the elements or otherwise, or become unsafe, the commissioner of highways of the town may cause the same to be immediately repaired or rebuilt if consented to by the town board," such commissioner has authority to rebuild a bridge on the consent of the town board only in case it is destroyed or becomes unsafe through some extraordinary means, but does not have that authority where the bridge becomes unsafe from natural wear or decay.

　　Parker, P. J., dissenting.

Appeal from Special Term, Fulton County.

Action by James C. Livingston and others, as taxpayers, against Dewitt Stafford, as commissioner of highways of the town of Stratford, and others, to restrain defendants from the erection of a bridge. From a judgment for plaintiffs, defendants appeal. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Ward & O'Connor, for appellants.

Robert F. Livingston (Andrew J. Nellis, of counsel), for respondents.

HOUGHTON, J. This is a taxpayers' action, brought to restrain the building of a new bridge, contracted for in writing, at an expense of $3,900, by the highway commissioner of a town, upon the consent of the town board. The existing bridge, maintained by the town for many years, had not been suddenly damaged or destroyed by the elements, or become unsafe from such cause; but the highway commissioner determined that it had become unsafe from natural wear and decay, and thereupon obtained the consent

of the town board to erect a new bridge, and entered into a written contract therefor, subsequently approved by the town board, the performance of which is sought to be restrained.

The question involved is whether section 10 of the highway law (chapter 568, p. 1179, Laws 1890) gives the highway commissioner of a town authority, upon his determination that a bridge needs rebuilding because it has become unsafe from natural wear and decay, to enter into a contract, with the approval of the town board, for the building of a new bridge at a cost exceeding the moneys appropriated for highway purposes. The trial court determined that he had no such power, and we think such conclusion is correct.

Section 10 of the highway law, so far as material, reads as follows:

"Sec. 10. Extraordinary Repairs of Highways or Bridges. If any highway or bridge shall at any time be damaged or destroyed by the elements or otherwise, or become unsafe, the commissioner of highways of the town in which such highway or bridge may be, may cause the same to be immediately repaired or rebuilt if consented to by the town board."

The source of this section of the highway law is chapter 103, p. 200, of the Laws of 1858. The title of that act was as follows:

"An act to provide for the speedy construction and repair of roads and bridges where the same shall be damaged or destroyed."

The act provided that in case any road or bridge should be damaged or destroyed by the elements, or otherwise, after any town meeting should have been held, or when it was too late to give notice that an appropriation therefor would be acted upon, it should be lawful for the highway commissioner, with the consent of the town auditors, to cause the same to be immediately repaired or rebuilt. Section 10 of the highway law, as originally enacted in 1890, did not contain the words "or become unsafe"; these having been added by an amendment contained in chapter 606, p. 408, of the Laws of 1895. As originally enacted, therefore, this section was practically in the language of the law of 1858.

The appellants insist that, whatever may have been the powers of the highway commissioner theretofore, the addition of the words "or become unsafe" gives him power to rebuild, with the consent of the town board, whether the unsafe condition arises from natural wear and decay, or from destruction and impairment by the elements. We think the Legislature could not have so intended. The whole trend of legislation has been towards restricting the powers of highway commissioners in the expenditure of money for highway purposes without the sanction of the taxpayers. Previous to 1832 a town could not expend exceeding $250 annually for highway and bridge purposes, and that amount was obtained only by direct application by the highway commissioner to the board of supervisors. In that year, by chapter 274, p. 480, of the Laws of 1832, a town was permitted at open annual town meeting to vote $250 additional. And again, in 1838, by chapter 314, p. 314, of the Laws of 1838, the voting of an additional $500 was authorized; and by chapter 615, p. 338, of the Laws of 1857, an additional amount of $750 was permitted. Thus, when the act of 1858 was passed, through the board

of supervisors the highway commissioner might obtain $250 for roads and bridges; the town board could raise no sum whatever; and the electors of the town could authorize only $1,500 to be raised, and this at annual town meeting only. In addition to this, by chapter 194, p. 293, of the Laws of 1849, the board of supervisors could authorize a town which had so voted to borrow not exceeding $4,000 in any one year for road and bridge purposes.

Roads and bridges might be damaged or destroyed by flood and storm shortly after the holding of a town meeting, and the delay incident to a vote and the levying and collecting of a tax would put the inhabitants to great inconvenience. To relieve this, and to provide a means for quick restoration of the roadway, the law of 1858 was enacted, giving extraordinary powers to the highway commissioner and town board. That it was intended to give this extraordinary power to these officers of the town only in case of emergency is clearly evidenced by the language restricting the destruction or damage to a period after the town meeting should have been held, or when too late to give notice that an appropriation would be asked for. The Legislature did not, we think, by section 10 of the highway law, intend to confer any greater or broader powers upon the highway commissioner than were conferred by the original act. The addition of the words "or become unsafe" must be restricted to the evident intent of the section. A storm or flood might render a bridge unsafe by tearing it from its moorings or undermining its piers, and not actually destroy it. An emergency would then arise, as much as though the bridge were actually destroyed.

A construction of the statute which would permit the highway commissioner to build a new bridge in place of one that he should determine unsafe because of wear and decay and old age would be contrary to the intent of the law, and contrary to the policy of the law, which permits taxpayers of a town to vote upon the imposition of burdens of this character. If this were not the true construction of the law, it would give most extraordinary powers to a highway commissioner and town board, and there would scarcely be a bridge in any town which he and the town board could not tear down and construct anew.

That the Legislature intended the section to apply only to an emergency is evidenced by the very section which precedes it (Highway Law [Laws 1890, p. 1179, c. 568] § 9), which provides that, in case the highway commissioner shall determine that the sum of $500 will be insufficient for highways and bridges of the town, he may cause a vote to be taken by ballot at an annual or special town meeting, authorizing such additional sum to be raised as he shall deem necessary, not exceeding one-third of 1 per centum upon the taxable property of the town, as shown upon the last assessment roll, and also by section 69 of the county law (Laws 1892, p. 1761, c. 686), which permits the board of supervisors of the county to authorize a town, upon its vote therefor, to pledge its credit for the raising of money for such purpose.

A commissioner of highways is not a general agent of a town, and has no authority to make contracts in its behalf unless specially authorized by statute.

The appellants insist that there are authorities upholding their contention. So far as we are able to discover, however, none have decided the precise point here involved. There may be found expressions in opinions in actions for negligence against towns which carry the idea that highway commissioners have unlimited power in the repair of bridges and the obtaining of funds therefor. These expressions are not authoritative, and were either unnecessary to the decision of the case or ill advised. In People ex rel. Morey v. Town Board, 175 N. Y. 394, 67 N. E. 620, the only question involved was whether or not the contract should have been in writing. And in People ex rel. Slater v. Smith, 83 Hun, 432, 31 N. Y. Supp. 749, the only question considered was whether the town board had given its consent. The only determination in People ex rel. Groton v. Town Board, 92 Hun, 585, 36 N. Y. Supp. 1062, was that the town board, having given its consent, could not reject the bills incurred by the highway commissioner. All these cases assume that the highway commissioner and the town board had authority to build the bridge, and none of them decide under what circumstances that authority would exist.

Our conclusion is that the authority given to a highway commissioner by section 10 of the highway law (Laws 1890, p. 1179, c. 568) permits him to rebuild a bridge upon the consent of the town board only in case it is destroyed or becomes unsafe through some extraordinary means, and that he does not have that authority where the bridge becomes unsafe from natural wear and decay.

The judgment must be affirmed, with costs. All concur, except PARKER, P. J., who dissents.