steps it has taken are preliminary. The plain intent of the act of 1899 was, as it seems to me, to give the city of Rome a preference, so far as the waters of Fish creek were concerned. There was a definite and specific declaration to that effect. This undoubtedly was within the power of the Legislature. Matter of Application of Union Ferry Co., 98 N. Y. 139, 153; Mills on Eminent Domain, § 11. In the construction of statutes, the intent is controlling. People v. Com'rs Taxes of N. Y., 95 N. Y. 558.

It is not proper to say that the grant or power did not exist until the taxpayers had ratified the proposed plan. Such a construction would put the Legislature in the attitude of saying to the city: "You may take the waters of Fish creek from time to time as you need them, unless some corporation under the general law take them or file a map and survey before you need the water or your taxpayers have an opportunity to vote." Such construction would, I think, be repugnant to the purpose of the act, and no intent of that kind can properly be inferred. If, for the interest of the general public, the law is too broad, the remedy is with the Legislature and should not be reached by construction. According to the evidence there is plenty of water for both parties, but the amount the plaintiff may take is not here for determination. I see no way to avoid the conclusion that the right of the plaintiff is paramount and that any right the defendant company may have under the general law is subject to the reasonable exercise by plaintiff of its prior right. In this view it is not important here to determine whether the ownership of the bed of the creek is in the state or in the riparian owners. In either case the plaintiff would have the right to condemn the property described in the complaint.

Upon the issues before me the plaintiff is, I think, entitled to judgment.

Lewis, Watkins & Titus, for appellants.
John S. Baker and O. P. Backus, for respondent.

PER CURIAM. Interlocutory judgment and final order affirmed, with costs, on opinion of Merwin, referee.

---

(114 App. Div. 915)

COLBY et al. v. TOWN OF MT. MORRIS et al.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. BRIDGES—TOWN LINE—CONSTRUCTION AND REPAIR.

The commissioners of highways are the officers designated by Highway Law, Laws 1890, pp. 1201, 1202, c. 568, §§ 130–134, who are given power to enter into a joint contract for the making or repair of a bridge over a stream forming the boundary line between two towns, without any action of the town's board or vote of the electors.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, § 11.]

2. SAME—FUNDS—PROVISION.

Where the commissioners of highways of two towns separated by a stream are not in funds, the authority to build or repair a bridge over the stream rests entirely on the board of supervisors, who are authorized to contract and to borrow money for such purpose by County Law, Laws 1892, p. 1761, c. 686, §§ 68, 69.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, § 11.]

3. SAME—LOCATION OF BRIDGE.

Commissioners of highways have no authority to contract for the building of a bridge not abutting on highways or on a site not selected or authorized by the towns joined by the bridge.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, §§ 6, 9.]

4. SAME—LAYING OUT OF HIGHWAY.

Where highways leading to a bridge over a stream on the boundary line between two towns were laid out while the bridge was in process of con-

struction, and such highways were open for public use on its completion, the irregularity or illegality of the contract for the construction of a bridge made before highways leading to the site were laid out was cured.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, §§ 6, 9.]

**5. SAME—CONTRACTS—PREMATURENESS.**

Where, after a contract for the construction of a bridge over a stream forming the boundary between two towns, a special town meeting voted to raise a sum sufficient for the construction and completion of the bridge by the issuance of bonds, and the board of supervisors was authorized to borrow money for such purpose, the action of the board in borrowing the money and the acceptance of the bridge when completed by the commissioners of the towns and by the state engineer operated as a waiver of all objection to the contract because it was prematurely entered into by the highway commissioners.

**6. SAME—COST OF BRIDGE—AUDIT.**

Where a bridge is constructed over a stream forming the boundary line between two towns, an audit of the expense by the joint action of the town boards of the respective towns is not required.

**7. SAME—ACCEPTANCE—LIABILITY OF TOWN.**

The authority to contract for the building of a bridge over a stream forming the boundary line between two towns and the supervision of its construction being given exclusively to the commissioners of highways and the board of supervisors, on their acceptance of the work and the certificate of approval of the bridge by the state engineer the towns become jointly liable to pay the expense of the construction in accordance with the terms of the contract.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, §§ 11, 22.]

**8. SAME—CLAIMS—ACTIONS.**

The rule that an action cannot be maintained against a town on a cause of action ex contractu, which the town board has jurisdiction to audit, has no application to an action against two towns for the contract price of a bridge constructed at their joint instance over a stream forming the boundary between the towns.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, § 22.]

**9. SAME—BOUNDARY STREAMS—TOWNS—LIABILITY FOR COST—APPORTIONMENT.**

Under County Law, Laws 1892, p. 1761, c. 686, §§ 68, 69, declaring that the board of supervisors shall apportion the cost of building and maintaining bridges over streams forming the boundary line between towns, each town is liable only for its just and equitable proportion or share of the cost of construction of such a bridge, which is determinable in an action for the contract price.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, §§ 11, 22.]

**10. EQUITY—JURISDICTION—WAIVER.**

Where an objection that equity had no jurisdiction of a suit to recover the cost of a bridge over a stream forming the boundary of two towns was not raised by answer, it was waived.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, 120.]

**11. BRIDGES—COST—APPORTIONMENT BETWEEN TOWNS—CONCLUSIVENESS.**

Where towns applied to the board of supervisors for leave to construct a bridge over a stream forming a boundary line between them and to borrow money therefor, the towns were concluded by the apportionment of the expense of the bridge made by the board of supervisors.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Bridges, § 22.]

**12. SAME—CONSTRUCTION—VILLAGES—AUTHORITY.**

County Law, Laws 1892, p. 1762, c. 686, § 70, provides for the raising of moneys with which to pay the obligation of the towns by tax and the manner of its expenditure, declaring that the consent of the trustees of a village therein shall be necessary for the action of the board of super-

visors as therein provided. Section 68 (page 1761) declares that the board of supervisors shall provide for the care of any bridge intersecting the boundary line of towns, which is by law a joint charge on each town, and to severally apportion as it may deem equitable the expense thereof on the towns respectively liable. Section 69 (page 1761) declares that the board, on application of the towns, may authorize the borrowing of money necessary for the construction of such bridges and apportion the expense between the towns. *Held*, that the board of supervisors acts on the application of the towns in making such an apportionment, and that it is not until a tax is to be imposed on the taxable property of the town that a village in the town has any voice in the matter.

Appeal from Special Term, Livingston County.

Action by Ellery Colby and others against the town of Mt. Morris and others. From a judgment in favor of plaintiffs, the town of Mt. Morris appeals. Affirmed.

The following is the opinion of Nash, J., in the court below:

The provisions of the statute authorizing the construction and repair of bridges over streams forming the boundary line of towns create a system entirely separate and distinct from that which provides for the care and supervision by the commissioner of highways of bridges within the towns and the extraordinary repair or construction of such bridges which shall at any time be damaged or destroyed by the elements. The highway law provides that towns shall be jointly liable for the construction of bridges over streams forming the boundary line of such towns, and further provides that, whenever any two or more towns shall be liable to make or maintain any bridge or bridges, the commissioner of highways of all the towns, or of one or more towns, the others refusing to act, may enter into a joint contract for making and repairing such bridges. Highway Law, Laws 1890, pp. 1201, 1202, c. 568, §§ 130–134. The county law provides that the board of supervisors shall provide for the care, maintenance, preservation, and repair of any bridge intersecting the boundary line of towns, which bridge is by law a joint charge on such towns, and to severally apportion as it may deem equitable the expense thereof on the towns respectively liable therefor. And the board may, upon application of any town liable or to be made liable to taxation in whole or in part for constructing, building, or repairing any bridge upon its borders, pursuant to a vote of a majority of the electors of any such town at an annual town meeting, or a special town meeting called for that purpose, or upon the written request of the commissioner of highways and town board of such town or towns, authorize such town or towns to construct, build, or repair such bridge, and to borrow such sums of money for and on the credit of such town or towns as may be necessary for that purpose. If such bridge shall be situated in two or more towns in the same county, the board shall apportion the expense among such towns in such proportion as shall be just. County Law, Laws 1892, p. 1761, c. 686, §§ 68, 69.

There is no provision requiring any action of the town board or a vote of the electors at an annual or special town meeting. The commissioners of highways are the officers designated, and are given power to enter into a joint contract for the making or repairing of a bridge over a stream forming the boundary line between towns. The commissioners, if in funds, may, of course, go on and build or repair. If not, then the authority rests entirely upon the board of supervisors to provide for the construction or repair of the bridge, and authorize the town or towns to construct, build, or repair and borrow money for that purpose. The commissioners of highways would have no authority to contract for the building of a bridge not abutting on highways, or upon a site not selected or authorized by the towns. Here a change of site was in contemplation. Several joint meetings of the town boards had been held, at which the question of the construction of a new bridge upon a site different from the old one was discussed. The commissioners of highways of the two towns were authorized to procure the right of way for a highway upon one of the sites under discussion, and at the last of these joint meetings

Mr. Gamble, one of the members of the town board of Mt. Morris, was "authorized to consult a competent engineer or engineers and submit for his opinion the plans for an iron bridge and substructure, prepared by Mr. Shepard, of the Havana Bridge Company, and, if said plan is approved by the engineer consulted, then the commissioners of highways are authorized to advertise for bids for the construction and completion of an iron bridge, foundations, and approaches in accordance with said plans." Highways leading to the bridge were laid out while it was in the process of construction and opened for public use upon its completion.

It must be held that the irregularity or illegality of making a contract before the highways leading to the site of the new bridge were laid out, if it was illegal, was cured by the subsequent construction of the bridge and opening and laying out of the highways. Huggans v. Riley, 51 Hun, 501, 4 N. Y. Supp. 282, 125 N. Y. 88, 25 N. E. 993. More than this, each of the towns in special town meeting had voted to raise a sum deemed sufficient for the construction and completion of a new iron bridge over the Genesee river between the towns and to raise the amount by the issue of town bonds. But by the subse-. quent action of the towns in applying to the board of supervisors for leave to construct the bridge and to borrow on the credit of the respective towns, Mt. Morris $16,000 and Leicester $10,000, for the purpose of building the bridge, and issue bonds therefor, the action of the board of supervisors thereon, the raising of the money by the issue of bonds, the acceptance of the bridge when completed by the commissioners of highways of the towns, and the state engineer having certified to the completion of the bridge, pursuant to the contract under which it was constructed, all possible objection to the contract upon the ground that it was prematurely entered into by the highway commissioners is removed. There is no provision of the statute for an audit by the joint action of the town boards of the respective towns of the expense of building a bridge over streams between towns. The authority to contract for the building of such a bridge and its construction is given exclusively to the commissioners of highways and the board of supervisors, and of necessity the supervision of the construction and the acceptance of performance of the contract rests with the highway commissioners, and upon their acceptance and the certificate of approval of the state engineer the towns become liable to pay the expense of construction in accordance with the terms of the contract. The towns are jointly liable. Neither is liable for the whole expense, and therefore the town board of one of the towns cannot audit a claim for the whole, nor can the town board of one of the towns audit the part of the claim which it should pay. The action of the town board of one of the towns could not bind or be conclusive upon the other. In order to audit the claim against one of the towns, it would first be necessary to apportion the expense between the towns, which is a matter wholly without the authority and jurisdiction of the town board.

The rule that an action cannot be maintained against a town upon a cause of action ex contractu, of which the town board has jurisdiction to audit, has, therefore, no application to the plaintiff's cause of action. It follows, also, that the audit or rejection by the town board of the town of Mt. Morris of the claim presented for the remainder of the contract price is no objection to a recovery. There is, in fact, no controversy over the amount due the plaintiffs upon the contract for the construction of the bridge, and no occasion for an audit. The supervisors of the respective towns, presumably with the approval of the town boards, have paid the proportion of the contract price which it is claimed each town is liable for, thereby conceding the amount claimed to be due upon the contract; the only controversy being the proportion which each town should pay.

It is objected that the court has no jurisdiction in equity to enforce payment of the plaintiff's claim. The plaintiffs, it seems, commenced an action at law, and on motion obtained leave, on payment of costs, to file a bill in equity for relief, and each of the towns has interposed answers to the amended complaint, without raising the question of equitable jurisdiction, and has also set up the equities as between the respective towns. As an original question I am of the opinion that the remedy of the plaintiffs is in equity. While

the statute authorizes the towns by their commissioners of highways to make a joint contract, it does not imply that the relations between the towns and the contractual parties will be in law the same as between individuals. The statute provides that the towns shall be liable to pay their just and equitable share of the expense of construction. This provision of the statute must be read into the contract for the construction of the bridge; the legal effect which is that each town is liable only for its just and equitable proportion or share of the cost of construction, and this must necessarily be determined in an action brought to recover the contract price. However this may be, it is sufficient to say that, not having been set up by answer, the objection to the equitable jurisdiction of the court is waived.

The contention of the town of Leicester is that each town should pay for the bridge in proportion to the equalized valuation as fixed and determined by the board of supervisors, and the town of Mt. Morris that each town should pay one-half the cost of the bridge. It is urged in behalf of the town of Mt. Morris that, the towns having a joint contract as provided by section 134 of the highway law, each become liable to pay one-half of the contract price, a right which the board of supervisors could not annul; that "joint expenses," used in the section of the highway law, means that the expense is to be equally divided—citing Laphan v. Rice, 55 N. Y. 472; Spier v. Com'r of Highway (Sup.) 3 N. Y. Supp. 438; Day v. Day, 94 N. Y. 157. These cases are not applicable, for the reason that the county law now provides that, if the bridge be situated in two or more towns in the same county, the board of supervisors shall apportion the expense among such towns in such proportion as shall be just. The towns having by their proper officers applied to the board of supervisors for leave to construct the bridge and to borrow the money therefor, of which leave they have availed themselves, the towns are concluded by apportionment of the expense made by the board.

But it is urged that, in order to give the board of supervisors power to act, the bridge being partly within limits of the village of Mt. Morris, the consent of the majority of the trustees of the village was required, as provided by section 70 of the county law. The language of this provision of section 70 is that the consent of the trustees of the village "shall be necessary for the action of the board of supervisors as herein provided." The section provides for the raising of moneys with which to pay the obligations of the towns by tax, and the manner of its expenditures. The provision of the section requiring such consent is inapplicable to the action of the board of supervisors under the provisions of sections 68 and 69. It is provided by section 68 that the board of supervisors shall provide for the care, maintenance, preservation, and repair of any bridge intersecting the boundary line of towns, which is by law a joint charge on such towns, and to severally apportion, as it may deem equitable, the expense thereof on the towns respectively liable therefor, without any application by the towns. In section 69 it is assumed that section 68 provides for the construction of bridges between towns, and provides that the board, upon application of the towns, may authorize the borrowing upon the credit of the towns such sums of money as may be necessary for the purpose of construction, and apportion the expense of construction upon the towns as may be just. The board acts upon the application of the towns in making the apportionment. It is not until a tax is to be imposed by the board upon the taxable property of the town that a village within the town has any voice in the matter.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

J. M. Hastings, for appellant.

Oscar B. Glezen (Martin S. Lynch, of counsel), for respondents Colby and others.

Strang, Doty & Strang, for respondent town of Leicester.

PER CURIAM. Judgment affirmed, with separate bills of costs to the respondents, on opinion of Nash, J., delivered at Special Term.