PEOPLE ex rel. CANTON BRIDGE CO. v. BOARD OF TOWN AUDITORS OF TOWN OF HORICON, WARREN COUNTY.

(Supreme Court, Appellate Division, Third Department. December 30, 1909.)

1. BRIDGES (§ 10*)—ESTABLISHMENT BY PUBLIC AUTHORITIES—CONTRIBUTION TO EXPENSES—"JOINTLY LIABLE."

Under Highway Law (Laws 1890, p. 1201, c. 568) § 130, as amended by Laws 1895, p. 265, c. 416, providing that, when public free bridges are constructed over streams forming the boundary lines of towns, such towns shall be "jointly liable" to pay the expenses of construction, the expense must be divided equally between the towns.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. § 22; Dec. Dig. § 10.*

For other definitions, see Words and Phrases, vol. 4, p. 3819; vol. 8, p. 7695.]

2. BRIDGES (§ 8*)—ESTABLISHMENT BY PUBLIC AUTHORITIES—CONTRIBUTION TO EXPENSES—CERTIORARI TO REVIEW ACTION.

Highway Law (Laws 1890, p. 1179, c. 568) § 10, as amended by Laws 1895, p. 408, c. 606, provides that, if any bridge shall become unsafe, the commissioner of highways may, with the consent of the town board, cause the same to be immediately rebuilt. Section 130 (page 1201), as amended by Laws 1895, p. 265, c. 416, provides that, when public free bridges are constructed over streams forming the boundary lines of towns, such towns shall be jointly liable to pay the expenses of such construction. Section 134 (page 1202) provides that, whenever two or more towns shall be liable to make or maintain any bridge, the same shall be built and maintained at the expense of such towns, without reference to the town lines, and that the commissioners of highways of all the towns, or one or more of such towns, the others refusing to act, may enter into a joint contract for making and repairing such bridge. Section 136 (page 1202) provides that if the commissioners of highways of either of such towns, after a notice in writing from the commissioner of highways of any other of such towns, shall not within 20 days consent in writing to build or repair any such bridge, the commissioners giving such notice may make or repair such bridge, and maintain an action against the town whose commissioners neglect or refuse to join in such making or repairing. The commissioner of highways of a town jointly liable with another town for the maintenance of a bridge gave notice under section 136 to the commissioner of the other town that the bridge was out of repair, and after examination of the bridge the town boards of both towns voted to rebuild the bridge, and the commissioners of the two towns let the contract, and the bridge was constructed and accepted by the commissioners, and was opened to public travel in 1899 and continuously used thereafter. *Held*, that one of the towns was liable for one-half of the expense of building the bridge, though only a majority of its town board agreed to its construction, and, no steps having been taken to review the action of the town boards or their power to act, their action is not subject to review in certiorari proceedings to compel the allowance of the claim for one-half the expense of building the bridge.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 11, 15; Dec. Dig. § 8.*]

3. BRIDGES (§ 5*)—STATUTORY PROVISIONS—REPEAL BY IMPLICATION.

Highway Law (Laws 1890, p. 1202, c. 568) § 134, provides that, whenever two or more towns shall be liable to construct any bridge, the same shall be built at the expense of such towns without reference to the town line, and that the commissioners of highways of all the towns, or of one or more of such towns, the others refusing to act, may enter into a joint contract for making such bridge. Section 135 (page 1202) provides that if the com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

missioners of highways of either of such towns, after notice in writing from the commissioner of highways of any other of such towns, shall not within 20 days give their consent in writing to build any such bridge, the commissioners giving such notice may make such bridge, and then maintain an action against the town whose commissioners neglected or refused to make such bridge, and recover from such town as much as it would be liable to contribute to the making of such bridge. County Law (Laws 1892, p. 1761, c. 686) § 68, entitled "Bridges over County Lines," was a re-enactment of Laws 1875, p. 557, c. 482, § 1, subd. 4, which provided that the board may apportion the expense of the construction of a public bridge over a stream forming the boundary lines of counties between the towns at such point. Other sections of the county law, in which said section 68 is found, relate more particularly to bridges intersecting county lines, and the building of a bridge between two towns in the same county is fully provided for in the highway law. *Held*, that County Law, § 68, did not repeal or destroy the effect of Highway Law, §§ 134, 135.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. § 5; Dec. Dig. § 5.*]

Cochrane, J., dissenting.

Certiorari by the People of the State of New York, on relation of the Canton Bridge Company, to compel the Board of Town Auditors of the Town of Horicon, Warren County, to reverse its decision not to allow relator's claim. The action of defendants reversed, and the matter remanded to them, with direction to audit and allow relator's claim.

Certiorari issued out of the Supreme Court, and attested on the 5th day of October, 1905, directed to the board of town auditors of the town of Horicon, Warren county, and to the several persons and officers composing said board, commanding them to certify and return to the clerk of the county of Warren all and singular the proceedings of the said board in relation to the disallowance and rejection of the claim of the relator. The claim of the relator, rejected by the defendants, is for one-half the contract price of a new iron bridge constructed by the relator over the Schroon river, connecting the towns of Chester and Horicon, amounting to the sum of $2,115.21, and the interest thereon. No question has been made as to the amount of the claim. For 25 years and upwards prior to October, 1898, there had existed a public free wooden bridge crossing Schroon river at the outlet of Schroon lake, which bridge connected a public highway leading up to the same in the town of Chester with a like public highway leading up to it in the town of Horicon. The bridge had been kept up and maintained at the joint expense of both towns. The bridge rested upon six or seven piers, the superstructure of which was supported by needle beams at about 12 feet distance from each other. In that month one of the needle beams of the bridge suddenly fell, precipitating into the river one William O'Neill and his team of horses while they were crossing the bridge, and he sustained injury and damage, for which he presented a claim to these two towns, which was settled by each town paying one-half of the same. On the 31st day of October, 1898, Atwood Carpenter, who was then the sole commissioner of highways of the town of Chester, made an examination of the bridge, and served upon Seth H. Nichols, the sole commissioner of highways of the town of Horicon, a notice that the bridge had partly fallen down, that the whole thereof was in a decayed, dangerous, and defective condition, and wholly unsafe for public travel, and it was absolutely necessary that a new bridge be built in place thereof, and requested the latter to join in the construction of such bridge at the joint expense of the two towns, and in case of his failure to consent thereto he, as commissioner of highways of the town of Chester, would proceed to construct such bridge pursuant to law. After the service of this notice, and on the 1st day of November, 1898, the commissioner of highways and town board of each town made an examination of the bridge in question. The town board of the town of Horicon voted three to

two, and the town board of the town of Chester voted unanimously, that the bridge should be rebuilt by an iron bridge. The town board of the town of Horicon, by a vote of three to two, passed a resolution reciting that the bridge had become damaged so that it was in an unsafe and dangerous condition, and consenting that its commissioner of highways, in conjunction with the commissioner of highways of the town of Chester, should cause the said bridge to be immediately rebuilt according to law. The town board of the town of Chester voted unanimously, authorizing its commissioner of highways, in conjunction with the commissioner of highways of the town of Horicon, to "immediately build a new iron bridge to take the place of the said wooden bridge, which has lately fallen down and become defective and unsafe for public travel." The commissioner of highways of the town of Horicon, after his town board had authorized the building of said new bridge, served his written consent on the commissioner of highways of the town of Chester to join with said town in the building thereof. Thereafter the commissioners of highways of the two towns, acting together, advertised for and received sealed bids for the building of said bridge, and received several different bids from different bridge companies therefor. The bid of the relator was the lowest received by them, and on the 28th day of November, 1898, the two commissioners entered into a written contract with the relator to furnish and erect the iron bridge and superstructure for said bridge at the agreed price of $4,200. The relator proceeded to build and complete the bridge pursuant to the terms of such contract, and the same was completed and accepted by the commissioners of highways of both towns, and was opened to public travel in March, 1899, and thereafter the old bridge was taken down and carried away, and the new bridge has ever since been used by the citizens of both towns as a portion of the public highway connecting the highways in the respective towns and leading thereto. The highway commissioners of both towns in that month had a settlement of their account of expenses and disbursements incurred by them in the building of the new bridge, together with the substructure and abutments thereof, and agreed upon the amount to be paid by each town, and furnished and filed verified statements thereof with each town, showing the expenses thereof, and the amount to be paid by each town. The town board of the town of Chester thereupon audited, and the town paid, one-half of the total cost; but the town of Horicon never paid any part thereof. The town board of the town of Horicon, on the relator's claim being presented to it for audit, rejected the same upon the merits, because the same was not a legal claim against the town. The relator thereupon sued out this writ.

Argued before SMITH, P. J., and CHESTER, COCHRANE, KELLOGG, and SEWELL, JJ.

John H. Cunningham, for relator.

Kellogg & Barker, for defendants.

CHESTER, J. The defendants seek to justify their rejection of the relator's claim upon the ground that the construction of the new bridge was not authorized by law. Section 10 of the old highway law (Laws 1890, p. 1179, c. 568), as amended by Laws 1895, p. 408, c. 606, which was in force at the time of the construction of this bridge, related to extraordinary repairs of highways or bridges and provided as follows:

"If any highway or bridge shall at any time be damaged or destroyed by the elements or otherwise, or become unsafe, the commissioner of highways of the town in which such highway or bridge may be situated, may, with the consent of the town board, cause the same to be immediately repaired or rebuilt, although the expenditure of money required may exceed the sum raised for such purposes as hereinbefore provided; and the commissioners of highways shall present the proper vouchers for the expense thereof to the town board, at their next annual meeting, and the same shall be audited by them and collected in the same manner as amounts voted at town meetings."

Section 130 of said highway law (page 1201), as amended by Laws 1895, p. 265, c. 416, provided that, when public free bridges are constructed over streams forming the boundary line of towns, such towns "shall be jointly liable" to pay the expenses of such construction. This means at the equal expense of the towns. Lapham v. Rice, 55 N. Y. 472. Section 134 (page 1202) of said highway law, which relates to joint liabilities of towns, and their joint contracts, provided that:

"Whenever any two or more towns shall be liable to make or maintain any bridge or bridges, the same shall be built and maintained at the joint expense of such towns, without reference to the town lines. The commissioners of highways of all the towns or of one or more of such towns, the others refusing to act, may enter into a joint contract for making and repairing such bridge."

Section 135 (page 1202) of said highway law, with respect to refusal to repair, provided that:

"If the commissioners of highways of either of such towns, after notice in writing from the commissioner of highways of any other of such town, shall not within twenty days give their consent in writing to build or repair any such bridge, and shall not within a reasonable time thereafter do the same, the commissioners of highways giving such notice may make or repair such bridge, and then maintain an action in the name of the town, against the town whose commissioners neglect or refuse to join in such making or repairing, and in such action the plaintiffs shall be entitled to recover so much from the defendant, as the town would be liable to contribute to the same, together with costs and interest."

The defendants seek the benefit of the rule laid down by us in a number of recent cases, where we have held that said section 10 of the highway law does not authorize the rebuilding of a bridge which has become defective by ordinary wear and tear or the natural decay of the materials of which it was constructed, at a cost exceeding the moneys appropriated for highway purposes, and that it only authorizes such construction where the bridge has become destroyed by some emergency or by some extraordinary cause. Livingston v. Stafford, 99 App. Div. 108, 91 N. Y. Supp. 172; People ex rel. Fellows v. Early, 106 App. Div. 269, 94 N. Y. Supp. 640; People ex rel. United Construction Co. v. Voorhies, 114 App. Div. 351, 99 N. Y. Supp. 918. The Livingston Case, above cited, was a taxpayer's action brought to restrain the construction of a bridge which the highway commissioner determined had become unsafe from natural wear and decay, and thereupon had obtained the consent of the town board to its construction, and had entered into a written contract therefor; the Fellows Case was one where the relator sought to compel the town board and its highway commissioner by mandamus to build a bridge that had been destroyed; and the United Construction Company Case was a writ of certiorari to review the action of a town board in rejecting the relator's claim for damages for not accepting six bridges contracted for by the commissioner of highways with the consent of the town board. The material for one bridge had been shipped when the relator received a letter from the supervisor, sent by direction of the town board, refusing to accept the bridges and canceling the contract. In the first two cases mentioned the question of liability was raised before any money had been expended. In the last case, while the contract had been entered upon, it was promptly canceled before exe-

cution. Besides this, there was an element of bad faith on the part of the relator, as it went ahead chargeable with knowledge that the officials of the town with whom it had acted had no lawful authority to bind the town.

These cases, therefore, are not controlling in support of the defendant's contention, even if it be conceded that authority for the construction of the bridge in question is to be found in said section 10. These cases, moreover, all related to bridges wholly within a town, and not to bridges crossing town lines, and it is more than doubtful if section 10 has any relation to, or was intended to apply to, a bridge or its approaches partly in two towns.

The town of Chester was evidently proceeding under sections 134 and 135 of the highway law, above referred to, and was putting itself in a position to charge one-half of the expense of its building the bridge upon the town of Horicon, in case that town refused to join therein. These sections seem to make the town upon which the notice provided for in section 135 is served liable for its part of the expense of such a bridge, whether the town has funds or not properly applicable for that purpose, and may make it liable therefor even against its protest.

In the case under review there is nothing impugning the good faith either of the relator, the commissioner of highways, or the town boards of either town. So far as appears, the contract in question was entered into in entire good faith by all parties. The bridge was constructed in accordance with the terms of the contract, it was accepted by the commissioners of highways of both towns, and ever since its acceptance has been in constant use by the citizens of both towns and by the public generally, and forms a part of one continuous highway partly in each town. It was a part of a much traveled highway in a much patronized summer resort. It was over a river from 200 to 250 feet wide, which could not be crossed by teams or pedestrians at that point without a bridge.

The members of the town board of each town, after the span had fallen, met at the bridge and inspected it, and each passed a resolution reciting, after inspection, that it was in an unsafe and dangerous condition, and directed its commissioner of highways, in conjunction with the commissioner of the other town, to cause a new bridge to be built immediately. These officers evidently acted under the belief that the law devolved the obligation upon the two towns jointly to repair or rebuild the bridge. They determined that it should be rebuilt. The statute (section 134) gave the commissioners of highways power to enter into a joint contract for building the new bridge, and they having done so, and having acted in good faith, and no steps having been taken to review or question their action, or their power to act, we think, under the circumstances presented here, and under the authorities, their action is not now subject to review or question in this proceeding. People ex rel. Graham v. Studwell, 91 App. Div. 469, 474, 86 N. Y. Supp. 967; Govers v. Board of Supervisors, 55 App. Div. 40, 43, 67 N. Y. Supp. 27; Hines v. City of Lockport, 50 N. Y. 236; People ex rel. McCabe v. Matthies, 179 N. Y. 242, 72 N. E. 103.

It may be, in view of the fact that the old bridge was sufficiently

repaired at small cost to permit of its being used during the construction of the new bridge on a slightly changed location at one end, that the town authorities erred in their judgment as to the necessity of the new bridge; but, if they did, that error cannot now be corrected. The defendants, I think, are not now in a position to test that question, or to deny the validity of the contract under which the bridge was built, or the lawfulness of the relator's claim. The town board of the town of Horicon, after inspecting the old bridge in its damaged condition, gave their consent to their commissioner of highways to join with the commissioner of highways of the town of Chester in building the new bridge at the joint expense of the two towns. Pursuant to this authority the contract was made and the bridge built. The new bridge was then open to public use, and the old bridge removed. During all that time, and down to the time the relator tried to enforce collection of its claim, no proceeding or action was brought to test the necessity for the new bridge, the legality of the acts of the town officers in respect to the matter or of the contract under which it was built, or to restrain the relator and these commissioners from constructing the bridge. It is now too late to raise these questions. People ex rel. Groton Company v. Town Board, 92 Hun, 585, 36 N. Y. Supp. 1062.

The defendants further urge that no part of the bridge in question is in the town of Horicon; their claim being that the east bank of the Schroon river, rather than its center, is the town line. We think it is unnecessary to determine this question, as it appears clearly that one of its approaches is in each town. It also appears that there are two other bridges crossing the Schroon river between these towns, both of which, as well as the bridge in question, have long been maintained at the joint expense of both towns. Under section 134 of the highway law I think it is unimportant, on the question of joint liability, whether the town line was in the center of the stream or upon its east bank. It has even been held, under a statute (Laws 1865, p. 302, c. 180, and Laws 1866, p. 196, c. 106) providing that a bridge between two towns should be kept in repair at an equal expense to each town, that the approaches to the bridge were a part thereof, and that both towns were liable for the maintenance thereof. Edwards v. Ford, 22 App. Div. 277, 47 N. Y. Supp. 995. The town of Horicon has even paid one-half of the expense of repairing one of the approaches to the bridge in question, incurred the following year after it was open for public travel.

I think, under the facts presented here, the town of Horicon is liable for its half of the expense of the bridge under the contract made by its commissioner of highways by authority of the majority vote of its town board, and that it cannot permit its officers to have the bridge constructed and completed pursuant thereto, and reap the benefits, past and prospective, of the structure, without paying the amount it contracted to pay therefor. I have not come to this conclusion without having in mind section 68 of the county law (Laws 1892, p. 1761, c. 686), which section is entitled "Bridges over County Lines." That was a re-enactment, with some change in verbiage, of subdivision 4, § 1, c. 482, p. 557, of the Laws of 1875, which provided that the board

may apportion the expense of the construction of a public bridge over a stream, forming the boundary lines of counties, between the towns at such point. From this fact, and the fact that the building of a bridge between two towns in the same county is fully provided for in the highway law, and that the other sections of article 4 of the county law, in which said section 68 is found, relate more particularly to bridges intersecting the county line, we may fairly infer that those provisions were not intended to repeal or destroy the effect of sections 134 and 135 of the highway law, which provide the manner in which bridges shall be built across the dividing lines of towns situated in the same county.

The determination of the defendants should therefore be reversed, with $50 costs and disbursements to the relator, and the matter remitted to the town board, with direction to audit and allow the relator's claim at the amount properly due thereon.

JOHN M. KELLOGG, J. (concurring in result). The highway law in force in 1898, when this bridge was built, at section 130, made the towns of the state liable to pay for the construction and repair of their free bridges, and made towns liable jointly for the construction and repair of bridges over town lines. The other provisions of the statutes relating to the building of bridges wholly in the town and those over the line of adjoining towns must not be confused, as they represent two entirely different systems.

With reference to bridges in the towns, the power of the highway commissioners is found in subdivision 7 of section 4 of the highway law (chapter 568, p. 1178, Laws of 1890), and is confined to the expenditure of such moneys as the town has raised and collected for that purpose. People ex rel. Everett v. Board of Supervisors, 93 N. Y. 397. The other subdivisions of that section of the statute are interpreted as defining the manner in which the commissioners shall apply such moneys to the highways and bridges of the town. Section 10 of the highway law, entitled "Repairs of Highways and Bridges," makes it the duty of the commissioners, in the cases of emergency therein provided, to repair or build the bridge, and they may incur an obligation therefor which must be met by the town.

The bridge in question is not governed by the above provisions, but by section 134, entitled "Joint Liability of Towns and Their Joint Contracts," which provides that, whenever two towns shall be liable to make or maintain a bridge, it shall be done at the joint expense of the towns without reference to town lines, and continues:

"The commissioners of highways of all the towns, or one or more of such towns, the others refusing to act, may enter into a joint contract for making and repairing such bridges."

This section charges upon the commissioners the duty to build the bridge, and upon their towns obligation to pay for the same. The duty of the commissioner is without qualification, and it is immaterial whether he has or has not funds, or whether the electors of the town approve or disapprove. The position is emphasized by the provision of section 135, entitled "Refusal to Repair," by which the commis-

sioners of one town may request those of the other town to join in building or repairing such a bridge, and, if they do not consent in writing within 20 days, the commissioners making the request may build or repair the bridge, and, in the name of the town, sue the other town for its share of the cost.

Section 136 (page 1202) provides that three freeholders of either town may apply to the court for an order requiring the commissioners to act and build or maintain the bridge, and each town is liable for its share of the cost thereof. Under this section it will be noted that, if the officers and the electors of both towns object to building the bridge, three freeholders may force upon the towns the building of the bridge and paying therefor. Section 142 (page 1203), entitled "Refusal to Repair Bridges," provides that when such a bridge becomes unsafe, or has fallen down, or is destroyed by floods, or otherwise, if the town after notice neglect to repair or rebuild the bridge, any person or corporation may do the same and charge the expense thereof upon the towns.

The joint liability provided for by the statute requires each town to pay one-half. Lapham v. Rice, 55 N. Y. 472. Section 69 (page 1761) of the county law, entitled "Authorizing Towns to Borrow Money," provides that, where a town is liable for building a bridge in the town or on its borders, an application may be made pursuant to a vote of the electors or the request of the commissioners of highways and town board, requesting the board of supervisors to permit the town to borrow money therefor, and then provides that if the bridge shall be situated in two or more towns in the same county the board shall apportion the expense among such towns in such proportion as shall be just. The board of supervisors in such case is without power to act except at the request of the electors or of the commissioners and town board, and the power to apportion the expense between two towns is an incident, and accompanies the permission of the town to borrow money. In this case no such request was made, and the board of supervisors had no power to make any direction as to the payment, and the ordinary rule obtains that each town is chargeable with one-half the expense. We may assume that, in case the expense of the bridge is so large that it is necessary for either town to borrow money therefor, it is deemed a sufficient reason to permit the board to determine in what proportion the towns shall bear the expense.

Chapter 330, p. 857, of the Laws of 1908, entitled "An act in relation to highways and bridges, and constituting a consolidation of the highway laws, and providing for a state department of highways and for the construction and maintenance of state and county highways," is, as it purports to be, a consolidation of the highway laws then existing, and, unless it clearly appears otherwise, we may fairly assume its provisions present a fair legislative construction of the laws theretofore existing. At section 254 (page 960) we find a substantial reenactment of section 134 of the prior law, except that after declaring that such bridges shall be built and maintained at the joint expense of such towns, without reference to town lines, it continues:

"Except where the board of supervisors has otherwise apportioned such expense as provided by section 97."

Section 97 (page 894) is a substantial re-enactment of section 69 of the county law. It does not, however, permit the board of supervisors to apportion the expenses, except upon an application of both towns. The law of 1908 does not, therefore, change in any material respect the rule laid down in Lapham v. Rice, supra, but it clearly indicates the continued existence of that rule. We are therefore safe in saying that the statutes in force at the time in question charged the expense of constructing this bridge one-half upon each town, unless in an application to the board of supervisors for borrowing money the board determines that the expense should be borne in different proportions. The general views of the statutes here suggested are in harmony with Marshall v. Hayward, 74 App. Div. 27, 77 N. Y. Supp. 57.

Colby v. Town of Mt. Morris, 114 App. Div. 915, 100 N. Y. Supp. 362, is not an authority contrary to these views. The bridge there was authorized by the local authorities and the vote of the two towns, and both towns applied to the board of supervisors for permission to build the bridge and bond the towns therefor, which permission was granted; the town of Mt. Morris being permitted to issue bonds for $16,000 and the town of Leicester $10,000. The plaintiff brought an action in equity to recover the contract price of the bridge. The court states:

"The only controversy being the proportion which each town should pay."

The decision was:

"The towns having by their proper officers applied to the board of supervisors for leave to erect the bridge and to borrow the money therefor, of which leave they have availed themselves, the towns are concluded by the apportionment of expense made by the board."

The other questions discussed were not in the case.

Section 68 of the county law, entitled "Bridges over County Lines," evidently was intended to relate to such bridges and none others. It apparently contemplates that bridges over county lines may in some cases be chargeable to the counties, or the counties and towns, and in other cases to the towns, and it uses general language, so as to cover all such cases. When we consider the origin and the place of this section in the statute, and have in mind that the highway law has fully provided for bridges over the lines of towns in the same county, this section may be fairly confined within the terms of its caption as relating to bridges over county lines only.

Apparently the different legislative provisions were based upon the idea that there are liable to be difficulties and delays in the construction of bridges which are charged upon two towns, and the Legislature charges upon the proper town officers the absolute duty of building such bridges. It is not contemplated in any such case that there shall be a vote of the people upon the subject, except the application to borrow money must be made either upon a vote of a town meeting or upon the written request of the commissioners and town board. The question of funds is not material, as one town might be in funds and the other not; one town might be willing to bond itself, or vote a tax, and the other not. The commissioners of one town are given

authority to compel the other town to act, and the want of funds, or the objection of the electors of the town to the bridge, is no defense. Neither town may want to rebuild or maintain the bridge, the electors and the commissioners of both towns may be opposed to it, but any three freeholders may compel them to act, and charge the expenses upon the towns, without regard to whether they have funds in hand. The town of Horicon, in this case, was forced into action by the notice under section 135, and, rather than permit the other town to determine every question with reference to the bridge, it properly joined in the enterprise. Whether the joint action of the officers of the two towns was wise or unwise we cannot say; but they were authorized to act, they built the bridge without objection, the proceedings were authorized by the statute, and the defendant is liable.

I therefore concur for affirmance.

SEWELL, J., concurs with CHESTER and KELLOGG, JJ. SMITH, P. J., not voting.

COCHRANE, J. (dissenting). Judge CHESTER correctly holds that section 10 of the highway law has no application to this case. This is true for two reasons: First, because that section by its terms applies to a bridge entirely within the boundaries of a town; second, because the section applies only in case of a crisis or emergency, or sudden destruction or damage by the elements, and not to a case like this, where the bridge has become unsafe merely from natural wear and use. Livingston v. Stafford, 99 App. Div. 108, 91 N. Y. Supp. 172, affirmed on the opinions of the Trial Term and Appellate Division 184 N. Y. 536, 76 N. E. 1099. This bridge in question had become temporarily unsafe only because one needle beam out of about a score in number fell. This was readily replaced, and the bridge continued to be used for about six months thereafter, and until the new bridge was completed. With comparatively little expense it might have continued in use much longer. At any rate there is no claim made that there was a sudden exigency, requiring expeditious or unusual methods, or that any circumstance existed which took this case out of the usual legal rules necessary to be observed in the construction of such a bridge.

I must protest, however, against the construction which is being placed on the provisions of the highway law applicable to this situation, first, because I believe such a construction clothes highway commissioners with extraordinary and even dangerous powers, not contemplated by the Legislature, and leads to inconsistent, if not incongruous, results; and, second, because such construction plainly ignores other legislation which was clearly intended to supplement the provisions of the highway law and to make a well-balanced and orderly system pertaining to the construction of highway bridges in and between towns. It has been the policy of the law to restrict the powers of highway commissioners in respect to the amount of money to be expended. As was said in the case last cited:

"The whole trend of legislation has been towards restricting the powers of highway commissioners in the expenditure of money for highway purposes without the sanction of the taxpayers. * * * A construction of the statute

which would permit the highway commissioner to build a new bridge in place of one that he should determine unsafe because of wear and decay and old age would be contrary to the intent of the law, and contrary to the policy of the law, which permits taxpayers of a town to vote upon the imposition of burdens of this character. If this were not the true construction of the law, it would give most extraordinary powers to a highway commissioner and town board, and there would scarcely be a bridge in any town which he and the town board could not tear down and construct anew."

The above language had reference to the conduct of a commissioner within his own town. But it is now gravely proposed that in a matter involving the welfare not merely of one but of two or more towns the bars should be thrown down, all restrictions removed, and highway commissioners, without let or hindrance, actuated by any caprice or erratic mentality, may fasten an unlimited indebtedness upon adjoining towns. According to the logic of the prevailing opinion, it is not necessary that they should even have the consent or co-operation of their town boards; for although in the present case the town boards of the two towns did assent to the action of the highway commissioners, such action on their part was a nullity, as no statute is referred to, and none existed, giving life or efficacy to their action. Furthermore, although commissioners must act within certain well-defined limits and restrictions in matters solely pertaining to their own towns, nevertheless it is now urged that in the larger fields of operations involving much greater expenditures they may have a free hand. It is a matter of common knowledge that some of the largest streams constitute the boundaries of towns and some of the most costly bridges span such streams. The present case may well be used as an illustration. Here was a bridge 200 or 250 feet in length, exclusive of its approaches, and involving the expenditure of thousands of dollars. In reference to such a bridge it is claimed the commissioners may involve their towns in expenditures without limit, although in respect to the construction of an insignificant bridge within the boundaries of a single town the same commissioners would be hedged about by legislative checks within an extremely narrow compass. It cannot be that the Legislature intended such inconsistencies, or that it has failed to provide a more rational or symmetrical system.

The statutes are not in such a hopeless and incomplete condition. There is no difficulty in answering the queries above suggested, or in dispelling the confusion and inconsistencies which must otherwise exist, if we approach the solution of the problem with the single purpose of ascertaining the true condition of the statutes and the legislative purpose as therein expressed, regardless of the consequences to particular litigants. Undoubtedly, if a bridge crossing town boundaries can be constructed with funds which the highway commissioners of either or both towns may have in their hands and at their disposal, such commissioners have to that extent exclusive power in the premises, the same as they would have under similar circumstances in respect to bridges wholly within their respective towns. That is what is meant, and all that is meant, by the provision in section 134 of the highway law that:

"The commissioners of highways of all the towns or of one or more of such towns, the others refusing to act, may enter into a joint contract for making and repairing such bridges."

That is simply the power which is analogous to the power of a commissioner to repair a bridge wholly within the limits of his town with funds in his possession. We are not dealing, however, with a case where the commissioners have constructed a bridge with funds at their disposal. But the case presents a question of the method of procedure when the two towns are to be subjected to unlimited indebtedness. In section 69 of the county law, which was several times amended, but as it stood at the time this bridge was constructed in the year 1898, it was provided as follows:

"The board [of supervisors] may, upon the application of any town liable or to be made liable to taxation, in whole or in part, for constructing, building, repairing or discontinuing any highway or bridge therein or upon its borders, pursuant to a vote of a majority of the electors of any such town, at an annual town meeting, or special town meeting, called for that purpose, or upon the written request of the commissioners of highways and town board of such town, or towns, authorize such town or towns to construct, build, repair, or discontinue such highway or bridge, and to borrow such sums of money for and on the credit of such town or towns as may be necessary for that purpose. * * * If such highway or bridge shall be situated in two or more towns in the same county, the board shall apportion the expenses among such towns in such proportion as shall be just."

That section does not repeal or modify a single line of the highway law. It supplements that act, and should receive appropriate recognition, instead of being absolutely ignored. Other provisions of the county law authorize assistance by the board of supervisors, in its discretion, in aid of towns unduly burdened by the expenses of bridges. Sections 63, 64 (page 1759). It thus appears that the town board has no duty or function to perform in reference to authorizing, raising, auditing, or paying for the construction of such a bridge. Its duties begin and end when it joins with the commissioner of highways in a written request to the board of supervisors. All authority then springs from the latter board. The town board was without jurisdiction in this case, either in the first instance to authorize this expenditure, or in the last instance to audit and direct its payment. The authority should have come from the board of supervisors before the indebtedness was incurred.

Another view of the statutes leads to the same conclusion that this indebtedness was not legally authorized and that the town board is without jurisdiction to audit the claim. I doubt whether, under the statutes existing at the time this bridge was constructed, the towns were ipso facto equally liable for the expense of the construction. The expression "joint expense" does not mean "equal expense." It is true that in the case of Lapham v. Rice, 55 N. Y. 472, and perhaps in other cases, it has been held that the expression "joint expense," as used in the then existing statutes, meant "equal expense." But in the quarter of a century that intervened between that decision and the construction of the bridge in question the highway laws experienced radical changes. As was said in the case of People ex rel. Root v. Board of Supervisors of County of Steuben, 146 N. Y. 107, 113, 40 N. E. 738, 740:

"The highway law of 1890 consolidated and revised the prior legislation of the state upon the subject of highways. It was not strictly a consolidation of

the prior statutes. New provisions were ingrafted on the antecedent law for the purpose of improving the highway system."

The court in Lapham v. Rice, supra, did not have before it for consideration the following statutory provisions. Section 69 of the county law above quoted contains this provision:

"If such highway or bridge shall be situated in two or more towns in the same county, the board shall apportion the expenses among such towns in such proportions as shall be just."

In a note to this section contained in Birdseye's Third Edition of the Revised Statutes, published in 1901, it is said:

"In consolidating and simplifying the former provisions many changes have been made." ·

Returning again to the highway law, we find in section 136 thereof that in case the commissioners refuse to rebuild the bridge, either for want of funds or any other cause, three freeholders may apply to the Supreme Court for an order requiring them to build the same, and that the court after an investigation "shall make an order thereon as the justice of the case shall require," and that, if funds "be needed by the commissioners to carry the order into effect, such court shall specify the amount of money required for that purpose, and how much thereof shall be raised in each town." Section 137 then provides for a similar application to the Supreme Court by the commissioner of one town to compel co-operation by the commissioner of the other town proving refractory or obstinate. The expense thus directed and determined by the Supreme Court does not go to the town board for audit and allowance, but under section 139 of the highway law the commissioner is required to attach to a copy of the court's order an accurate account under oath of what he has done and deliver it to the supervisor of his town, and it is then provided:

"The board of supervisors at their annual meeting shall levy a tax upon each of such towns, when in the same county, and upon the appropriate town when in different counties, for its share of the cost of building, rebuilding or repairing such bridge, after deducting all payments actually made by the commissioners thereon, which tax including prior payments, shall in no case exceed the amount specified in the order."

Section 142 of the highway law contains provisions whereby, if the commissioners of highway of the adjoining towns after notice neglect to repair or to build the bridge, the same may be rebuilt or repaired by any person or corporation under certain circumstances, and that the expense thereof—

"shall be a charge on such adjoining towns, each being liable for its just proportion; and the person or corporation who has made such expenditure, or shall make such expenditure, may apply to the Supreme Court, at a Special Term, for an order requiring such towns severally to reimburse such expenditures, which application shall be made by serving papers upon the commissioners of highways of each of such towns at least eight days; and the court may grant an order requiring each of the adjoining towns to pay its just proportion of the expenditure, specifying the same; and the commissioners of highways in each of such towns shall forthwith serve a copy of such order upon the supervisor of each of their towns, who shall present the same to the board of supervisors, at their next annual meeting. The board of supervisors shall raise the amount charged upon each town by the order, and cause the

same to be collected and paid to such persons or corporation as incurred the expenditure."

The statutes thus referred to point to two conclusions: First, that town boards are not intrusted with the power to authorize, audit, or direct payment of such expenditures, but that such power is carefully guarded, and vested either with the board of supervisors or with the Supreme Court, as the case may be, to be determined and adjudged in advance of the expenditures, and that the channel of payment is through the board of supervisors to raise the amount by charging it upon the respective towns, and that the town boards are entirely without power or responsibility in reference thereto; second, that the expense is not an equal charge upon the towns, but is to be apportioned and determined in advance either by the board of supervisors or by the Supreme Court. And of course it is self-evident that if the expense is not an equal burden upon the towns, but is to be apportioned according to equitable circumstances, the town boards have no power or jurisdiction in reference thereto. The record in this case shows the justice and propriety of such legislation. The town of Chester has much more taxable property than the town of Horicon, and in addition thereto makes far more use of the bridge in question. Numerous cases exist where the use of a bridge by one town is insignificant in comparison with the use made thereof by the adjoining town.

The views heretofore expressed have already received judicial sanction in the case of Colby v. Town of Mt. Morris, 100 N. Y. Supp. 362, which case was unanimously affirmed in the Appellate Division on the opinion in the court below (114 App. Div. 915), and by the Court of Appeals without opinion (191 N. Y. 510, 84 N. E. 1111). The decision about to be made herein in my opinion practically overrules that case. It was there expressly held that the commissioners, if in funds, might build or repair the bridge, but, if not, "then the authority rests entirely upon the board of supervisors to provide for the construction or repair of the bridge, and authorize the town or towns to construct, build, or repair, and borrow money for that purpose." It was further stated:

"There is no provision of the statute for an audit by the joint action of the town boards of the respective towns of the expense of building a bridge over streams between towns. * * * The towns are jointly liable. Neither is liable for the whole expense, and therefore the town board of one of the towns cannot audit a claim for the whole, nor can the town board of one of the towns audit the part of the claim which it should pay. The action of the town board of one of the towns could not bind or be conclusive upon the other. In order to audit the claim against one of the towns, it would first be necessary to apportion the expense between the towns, which is a matter wholly without the authority and jurisdiction of the town board. * * * The statute provides that the towns shall be liable to pay their just and equitable share of the expense of construction. This provision of the statute must be read into the contract for the construction of the bridge, the legal effect of which is that each town is liable only for its just and equitable proportion or share of the cost of construction, and this must necessarily be determined in an action brought to recover the contract price. * * * The contention of the town of Leicester is that each town should pay for the bridge in proportion to the equalized valuation as fixed and determined by the board of supervisors, and the town of Mt. Morris that each town should pay one-half the cost of the bridge. It is urged in behalf of the town of Mt. Morris that, the

towns having a joint contract as provided by section 134 of the highway law, each become liable to pay one-half of the contract price, a right which the board of supervisors could not annul; that 'joint expenses,' used in the section of the highway law, means that the expense is to be equally divided—citing Lapham v. Rice, 55 N. Y. 472; Spier v. Com'r of Highway (Sup.) 3 N. Y. Supp. 438 [50 Hun, 607]; Day v. Day, 94 N. Y. 157. These cases are not applicable, for the reason that the county law now provides that, if the bridge be situated in two or more towns in the same county, the board of supervisors shall apportion the expense among such towns in such proportion as shall be just."

Three propositions were decided in that case: First. That the authority for the construction of a bridge where the commissioners were not in funds for that purpose rested entirely with the board of supervisors. That proposition would, of course, be subject to the power of the court to grant the authority in cases falling within the statutes above quoted. Second. That the expense of such construction is not an equal liability upon the towns, but must be apportioned between them. Third. That the town board is without jurisdiction either to authorize the expenditure or to audit the same after it has been duly authorized by the board of supervisors. Those propositions were directly involved in the determination made in that case. The question of the equal liability of the towns was one of the questions litigated and determined, and if the town board had possessed jurisdiction of the claim the action could not have been maintained directly against the town.

What has been said concerning the statutes, of course, has no reference to the present highway law. By chapter 330 of the Laws of 1908 the highway law was again radically amended and revised.

The good faith of the participants in this unlawful project is urged as a reason why the town should pay the unlawful claim. I challenge the good faith of the officers responsible for the construction of this bridge. By a bare majority the town board, assuming a power which they did not possess, gave their assent. The action of public officers within the sphere of their official duties is presumed to have been in good faith; but no such presumption clothes them when they overstep their prerogatives and act without even the color of authority. The supervisor of this town repeatedly and vainly protested against this expenditure while the work was going on, on the ground of its unlawfulness. The highway commissioner made a personal profit out of the affair. He converted his official action into a source of individual gain. His claim against this town for services in connection with the construction of this bridge awaits the result of this action. When requested to cease such services, he stated that he had been employed by the town of Chester, and would look to that town for his compensation, if the town of Horicon declined payment. His official judgment was certainly stimulated, if not obscured, by the expectation of personal profit, and the decision of this court justifies such expectation.

The evidence shows that this bridge could, for the trifling expenditure of $40, have been placed in good repair for years to come. I cannot refrain in this connection, even at the risk of prolixity, from here quoting what was said by the court at Trial Term in its opinion in the case of Livingston v. Stafford, supra. My excuse for doing so

is that such opinion received the indorsement of the court of last resort, because the affirmance by that court was upon the opinion both of the Trial Term and Appellate Division:

"Town officers are not chosen always from the most intelligent, expert, and honest class of men; neither are they always deaf to the solicitations of smooth bridge company agents, ceaselessly traveling the highways and mountain roads of interior, thinly inhabited towns, with eyes sharp to see extraordinary necessities where none exist, always in pursuit of handsome sales to easily persuaded officers, while never too selfish to imperil success. Many a town, poor in property and number of people, commonly has within its limits from 20 to 50 bridges, and doubtless slight defects and need for improvement can be seen in every one. Is it possible that highway commissioners and town boards, often nontaxpaying officers, because of such slight defects, have limitless power to replace such bridges with stone arches and steel span structures at enormous expense, to be paid by the year's tax, when the taxpaying voters themselves are restrained in power and cannot voluntarily tax or bond themselves and their town for such purposes, except to a limited extent? I cannot believe that the Legislature intended to confer such power and permit thereby the ruinous consequences which might follow."

But what is the relevancy in a case of this kind of the question of good faith on the part of those responsible for this bridge? Why should there be even any reference to that question? In the impartial endeavor to properly construe these statutes, and to define the powers and limitations of public officers, it is not of the slightest consequence that they may have acted in entire good faith, or that this relator, having expended its money, may lose its claim, no matter how meritorious, or that the officers of the town of Chester, acting with equal disregard for law and their official oaths and responsibilities, have paid one-half of the unlawful claim, or that the people of this town, in common with the traveling public generally, have received the benefit of this bridge. They could not destroy it, or well refuse to travel over it, for it superseded the other structure. They are in the helpless condition of having had something forced upon them which it is now said has benefited them, and for which they should therefore make compensation. The officers of a town are not its agents, and no question of estoppel arises.

That argument was used in the recent case of Niland v. Bowron, 193 N. Y. 180, 85 N. E. 1012, where a highway commissioner had, as in this case, in excess of his power and without procuring the necessary authority from the board of supervisors under said section 69 of the county law, contracted for the construction of a highway, and the town board passed a resolution agreeing to pay the same, but subsequently rejected the bill of the relator, and as in this case, so there, the argument was used that, even if the action of the commissioner was illegal, it was ratified by the resolution of the town board. The court said in reply thereto:

"The answer to this suggestion is that the town board was as powerless in the premises as the commissioner. The statute limits and defines the powers and duties of town boards quite as strictly as those of highway commissioners, and the acts of either in excess of statutory authority are equally void. Prior to the enactment of chapter 396, Laws 1902, which has no application here, a town board had no power to let or approve contracts in relation to highways which called for the expenditure of more money than was raised by taxation under section 53, except in the case of emergencies under section 10, or except

as provided by section 69 of the county law (Laws 1892, c. 686). That section of the county law, so far as material, provides that upon the application of a majority of the electors of a town, or the highway commissioner and town board, the board of supervisors may authorize the construction of a road and the borrowing of money to pay therefor. This section was not complied with. The town board, therefore, had in the first instance no power to enter into this contract, and it could not by its subsequent action ratify a contract which neither it nor the highway commissioner had the power to make."

It is suggested by Mr. Justice KELLOGG that section 69 of the county law is permissive only, and that its purpose is to permit the town to borrow money, and that, inasmuch as the present claim is to be raised by immediate taxation, it has no application. By the language of the act it is not restricted merely to authority for borrowing money, but also for construction, and this limited view of the statute seems to be directly contrary to the views expressed in Niland v. Bowron, 193 N. Y. 180, 85 N. E. 1012, supra; for in that case the effort was to require payment by immediate taxation, but the court held, as I understand the decision, that compliance with section 69 of the county law was nevertheless essential, unless the highway commissioner had in his hands the requisite funds for the proposed expenditure.

This town, in common with other municipalities, should be protected against an effort, by subtle and specious argument that it has been benefited, to fasten upon it a liability which never had any legal inception. The town board which rejected this claim would be derelict in its duty if it listened to such arguments. In its efforts to protect its town against such a demand, it should receive the commendation which it deserves.

I therefore vote to sustain the determination of the town board now under review.